**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CENTER CAPITAL CORPORATION, | ) | |
| | ) | C.A. No: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JR LEAR 60-099, LLC, J.B. HUNT, LLC, | ) | |
| PINNACLE AIR, LLC, JET RIDE, INC., | ) | |
| ROBERT B. THORNTON, and | ) | |
| BILL W. SCHWYHART, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff CENTER CAPITAL CORPORATION ("Center Capital"), and

for its Complaint against of JR LEAR 60-099, LLC ("JR Lear"), J.B. HUNT, LLC ("J.B. Hunt"),

PINNACLE AIR, LLC ("Pinnacle"), JET RIDE, INC. ("Jet Ride"), ROBERT B. THORNTON,

("Thornton") and BILL W. SCHWYHART ("Schwyhart"), and in support states as follows:

### PARTIES

1.      Center Capital is a corporation organized under the laws of the State of

Connecticut and has its principal place of business located at 3 Farm Glenn Boulevard,

Farmington, Connecticut 06032.

2.      JR Lear is a limited liability company organized under the laws of the State of

Delaware which, upon information and belief, has a principal place of business located at 3333

Pinnacle Hills Parkway, Penthouse 2, Rogers, Arkansas, and whose registered agent is

Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington,

Delaware.

1

3.    Pinnacle is a limited liability company organized under the laws of the State of Delaware which, upon information and belief, has its principal place of business located at 1370 South Old Missouri Road, Springdale, Arkansas and whose registered agent is Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware. Pinnacle is named as a defendant solely on the basis that it may have possession of the aircraft as further described in this Complaint and therefore may be a necessary party for the prayed for order of replevin.

4.    Jet Ride is a corporation organized under the laws of the State of Ohio which, upon information and belief, has its principal place of business located at 7250 Star Check Drive, Columbus, Ohio. Jet Ride is named as a defendant solely on the basis that it may have possession of the aircraft as further described in this Complaint and therefore may be a necessary party for the prayed for order of replevin.

5.    Thornton is an individual and citizen of the State of Arkansas who resides at 12135 Highway 72, West, Bentonville, Arkansas.

6.    Schwyhart is an individual and citizen of the State of Arkansas who resides at 9 Clubhouse Drive, Rogers, Arkansas.

7.    J.B. Hunt is a limited liability company organized under the laws of the State of Arkansas with a principal place of business at 611 W. Brown Boulevard, Fayetteville, Arkansas.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. Section 1332(a) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and this controversy is between citizens of different states.

9.    Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(a)(2) and (3).

2

## FACTS

10.    Center Capital, as assignee of Key Equipment Finance, Inc., and JR Lear entered

into the following contractual documents for the purchase of a certain aircraft:

- Aircraft Security Agreement dated September 26, 2006
  *See* Exhibit A

- Schedule 1 to Aircraft Security Agreement
  *See* Exhibit B

- Exhibit A to Aircraft Security Agreement Financial Covenants
  *See* Exhibit C

- Exhibit B to Aircraft Security Agreement Form Irrevocable De-Registration and Export
  Request Authorization
  *See* Exhibit D

- Exhibit C to Aircraft Security Agreement- Condition of Aircraft
  *See* Exhibit E

- Certificate of Authority
  *See* Exhibit F

- Certificate of Authorized Representative
  *See* Exhibit G

- Promissory Note
  *See* Exhibit H

- Borrower Acknowledgement Certificate of Acceptance
  *See* Exhibit I

The foregoing exhibits are made a part hereof for all purposes as if set out herein verbatim

(collectively "Aviation Security Agreement").

11.    The aircraft financed by Center Capital through the Aviation Security Agreement

is set forth and further described in the Schedule1 to the Aircraft Security Agreement as follows:

Airframe Make and Model: Learjet, Inc., Model 60
United States Registration Number: N60AN
Airframe Manufacturer's Serial Number: 099
Engine Make and Model: Pratt & Witney of Canada, Model 305A

Engine Manufacturer's Serial Numbers: PCE-CA0028 and PCE-CA0032

(hereinafter the "Aircraft").  *See* Schedule 1 to Aircraft Security Agreement attached hereto as Exhibit B

12.    Center Capital has a perfected first priority purchase money security interest in the Aircraft. *See* Aircraft Lien Registration Documents attached hereto as Exhibit J.

13.    Center Capital is the assignee of Key Equipment Finance, Inc., pursuant to Master Assignment Agreement. *See* Master Assignment Agreement attached hereto as Exhibit K.

14.    Defendants, JR Lear, J.B. Hunt, Thornton and Schwyhart accepted and agreed to the Master Assignment Agreement.  *See* November 29, 2006, Letter of Notice and Acknowledgement of Assignment of Aircraft Security Agreement attached hereto as Exhibit L.

15.    Defendants are in default under the terms of the Aviation Security Agreement due to the failure to make the payment due July 1, 2008, in the amount of $53,632.45 and all subsequent payments and as a result the Aviation Security Agreement was accelerated and the principal remaining balance due and owing as of the acceleration date of July 24, 2008 was $5,410,890.24, late charges in the amount of $4,492.75, plus prejudgment interest at per diem rate of $2,705.45 subsequent to July 24, 2008.  *See* Verification of Mr. Craig Enright, Vice-President, Asset Management, Center Capital.

16.    The Aircraft is highly mobile and at risk of destruction.  *See* Verification of Mr. Craig Enright, Vice-President, Asset Management, Center Capital.

17.    The location of the Aircraft is unknown.

### COUNT I
### SEQUESTRATION AND/OR WRIT OF REPLEVIN
### POSSESSION AND FORECLOSURE

18.    Defendants have failed to pay the installment payment due July 1, 2008 and all subsequent payments and therefore are in default pursuant to Section 5.1 (a) of the Aviation Security Agreement which provides:

> Section 5.1   Events of Default: Remedies.   As used herein, the terms "Event of Default" means any of the following events:
>
> > (a)  Grantor [JR Lear] fails to pay any installment of principal or interest on the Notices or any amount due hereunder within ten (10) days after the same has become due.

*See* Exhibit A, page 5.

19.    Upon information and belief, Defendants are in default pursuant to Section 5.1(c ) of the Aviation Security Agreement due to JR Lear's operation, use and locating the Aircraft outside the continental United States, Alaska or Canada without the prior written consent of Center Capital in direct violation of Article 2- Covenants of the Aviation Security Agreement. *See* Exhibit A, pages 2 and 5.

20.    Upon a breach of the Aviation Security Agreement, Center Capital is entitled to immediate possession of the Aircraft as set forth in Section 5.2(b) and (c) of the Aviation Security Agreement. *See* Exhibit A, page 5

21.    Section 5.2(b) and (c) of the Aviation Security Agreement provides:

> Section 5.2   Remedies.   Upon the occurrence of any Event of Default, Secured Party [Center Capital] may declare any or all of the Obligations to be immediately due and payable…In addition, Secured Party [Center Capital] may exercise any one or more of the following remedies, as Secured Party [Center Capital] in its sole discretion elects:
>
> > (b) Cause Grantor [JR Lear], at its expense, promptly to return the Aircraft to Secured Party [Center Capital] at such place as Secured Party [Center Capital] designates
>
> > (c) Enter upon any premises where the Aircraft is located, and with or without notice to the Grantor [JR Lear] take immediate possession of and remove the same, together with an Engines and Parts, by self-help, summary proceeding or otherwise without any liability of any kind

5

whatsoever on the part of Secured Party [Center Capital] for or by reason of such entry or taking of possession.

22.    The Aircraft has an estimated approximate value of $5,000,000.00, depending upon condition.

23.    Center Capital has demanded payment and surrender and return of the Aircraft.

24.    JR Lear has refused to surrender and return the Aircraft to Center Capital.

25.    The Aircraft has not been taken for a tax, assessment or fine pursuant to a statute or seized under an execution or attachment against the property of Center Capital or, if so seized, that it is by statute exempt from such seizure.

26.    The Aircraft is highly mobile and subject to being destroyed, damaged or seized.

WHEREFORE, Center Capital respectfully requests that this Court enter judgment in its favor under Count I as follows:  issuing a writ of replevin possession and foreclosure jointly and severally against Defendants JR LEAR 60-099, LLC, J.B. HUNT, LLC, PINNACLE AIR, LLC, JET RIDE, INC., ROBERT B. THORNTON, and BILL W. SCHWYHART directing said defendants to turn over possession of the Aircraft identified herein to a designated representative of  Center Capital immediately but no later than twenty-four (24) hours of the date of this Court's Order in good air worthy condition to a Center Capital representative and issue a writ of replevin ordering the United States Marshall or the sheriff of any district or county where the Aircraft can be found and to use all reasonable and necessary force to obtain possession of the Aircraft and in the event that the Aircraft cannot be located, require the individual defendants and designated corporate representatives of the corporate defendants to appear before this Court to answer for the Aircraft's whereabouts and if the Aircraft is not returned, enter judgment in favor of Center Capital and against Defendants JR LEAR 60-099, LLC, J.B. HUNT, LLC,

6

ROBERT B. THORNTON, and BILL W. SCHWYHART, jointly and severally, for the fair market value of the Aircraft not returned plus interest, costs and attorneys' fees.

**COUNT II**
**DAMAGES FOR BREACH OF CONTRACT AGAINST JR LEAR**

27.    Center Capital realleges the allegations contained in the previous paragraphs of its Complaint as if fully set forth herein.

28.    Center Capital has performed all of its obligations under the Aviation Security Agreement.

29.    JR Lear has defaulted under the terms of the Aviation Security Agreement by failing to make the payments required under said agreement due July 1, 2008, and all subsequent payments. In addition, upon information and belief, the Aircraft has been flown outside of the continental United States, Alaska and Canada without the prior written consent of Center Capital in violation of the Aviation Security Agreement.

30.    As a result of the default, the Aviation Security Agreement was accelerated per the terms of said contract. The principal remaining balance due and owing as of the acceleration date of July 24, 2008 was $5,410,890.24, plus late charges in the amount of $4,492.75, interest at per diem rate of $2,705.45 subsequent to July 24, 2008. *See* Verification of Mr. Craig Enright, Vice-President, Asset Management, Center Capital.

WHEREFORE, Center Capital prays for judgment in its favor and against JR Lear 60-099, LLC in the amount of $5,410,890.24, late charges in the amount of $4,492.7, prejudgment interest at per diem rate of $2,705.45 subsequent to July 24, 2008  at the contract rate or the highest rate allowed by law until the date of judgment plus costs and attorneys' fees and any further relief as this Court deems just under the circumstances.

7

## COUNT III
## BREACH OF CORPORATE GUARANTY AGAINST J.B. HUNT

31.     Center Capital realleges the allegations contained in the previous Paragraphs of its

Complaint as if fully set forth herein.

32.     Center Capital entered into a Corporate Guaranty with J.B. Hunt. *See* Exhibit M.

The Corporate Guaranty provides, in relevant part, as follows:

> J.B. Hunt, LLC ("Guarantor"), ..., hereby absolutely and irrevocably guarantees
> to Lender the full and prompt payment and performance by Borrower of all
> Obligations (as that term is defined below) on the terms and conditions set forth in
> this Guaranty, the liability of Guarantor is unlimited and the obligations of
> Guarantor are continuing.  Notwithstanding the foregoing, the liability of the
> Guarantor under this Guaranty shall not exceed an amount (the "Cap") equal to
> (a) thirty (30%) of the then outstanding Obligations...

33.     Center Capital has performed all of its obligations under Aviation Security

Agreement.

34.     JR Lear has defaulted under the terms of the Aviation Security Agreement by

failing to make the payments required under said agreement due July 1, 2008, and all subsequent

payments. In addition, upon information and belief, the Aircraft has been flown outside of the

continental United States, Alaska and Canada without the prior written consent of Center Capital

in violation of the Aviation Security Agreement.

35.     As a result of the default, the Aviation Security Agreement was accelerated per

the terms of said contract.  The principal remaining balance due and owing as of the acceleration

date of July 24, 2008 was $5,410,890.24, plus late charges in the amount of $4,492.75, interest at

per diem rate of $2,705.45 subsequent to July 24, 2008. *See* Verification of Mr. Craig Enright,

Vice-President, Asset Management, Center Capital.

WHEREFORE, Center Capital prays for judgment in its favor and against J.B. Hunt

pursuant to the Corporate Guaranty in the amount of thirty percent (30%) of the following:  the

accelerated principal remaining balance of $5,410,890.24, late charges in the amount of $4,492.7, prejudgment interest at per diem of $2,705.45 subsequent to July 24, 2008, at the contract rate or the highest rate allowed by law until the date of judgment plus costs and attorneys' fees and any further relief as this Court deems just under the circumstances.

**COUNT IV**
**BREACH OF PERSONAL GUARANTY AGAINST ROBERT B. THORNTON**

36.    Center Capital realleges the allegations contained in the previous paragraphs of its Complaint as if fully set forth herein.

37.    Center Capital entered into a Personal Guaranty with Thornton. *See* Exhibit N. The Personal Guaranty provides, in relevant part, as follows:

> Robert B. Thornton ("Guarantor"), ..., hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below) on the terms and conditions set forth in this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. Notwithstanding the foregoing, the liability of the Guarantor under this Guaranty shall not exceed an amount (the "Cap") equal to (a) fifty (50%) of the then outstanding Obligations...

38.    Center Capital has performed all of its obligations under Aviation Security Agreement.

39.    JR Lear has defaulted under the terms of the Aviation Security Agreement by failing to make the payments required under said agreement due July 1, 2008, and all subsequent payments. In addition, upon information and belief, the Aircraft has been flown outside of the continental United States, Alaska and Canada without the prior written consent of Center Capital in violation of the Aviation Security Agreement.

40.    As a result of the default, the Aviation Security Agreement was accelerated per the terms of said contract. The principal remaining balance due and owing as of the acceleration date of July 24, 2008 was $5,410,890.24, plus late charges in the amount of $4,492.75, interest at

9

per diem rate of $2,705.45 subsequent to July 24, 2008. *See* Verification of Mr. Craig Enright, Vice-President, Asset Management, Center Capital.

WHEREFORE, Center Capital prays for judgment in its favor and against Robert B. Thornton pursuant to his Personal Guaranty in the amount of fifty percent (50%) of the following: the accelerated principal remaining balance of $5,410,890.24, late charges in the amount of $4,492.7, prejudgment interest at per diem rate of $2,705.45 subsequent to July 24, 2008, at the contract rate or the highest rate allowed by law until the date of judgment plus costs and attorneys' fees and any further relief as this Court deems just under the circumstances.

**COUNT V**
**BREACH OF PERSONAL GUARANTY OF BILL W. SCHWYHART**

41.    Center Capital realleges the allegations contained in the previous paragraphs of its Complaint as if fully set forth herein.

42.    Center Capital entered into a Personal Guaranty with Schwyhart. *See* Exhibit O. The Personal Guaranty provides, in relevant part, as follows:

> Bill W. Schwyhart ("Guarantor"), ..., hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below) on the terms and conditions set forth in this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. Notwithstanding the foregoing, the liability of the Guarantor under this Guaranty shall not exceed an amount (the "Cap") equal to (a) fifty (50%) of the then outstanding Obligations...

43.    Center Capital has performed all of its obligations under Aviation Security Agreement.

44.    JR Lear has defaulted under the terms of the Aviation Security Agreement by failing to make the payments required under said agreement due July 1, 2008, and all subsequent payments. In addition, upon information and belief, the Aircraft has been flown outside of the

10

continental United States, Alaska and Canada without the prior written consent of Center Capital in violation of the Aviation Security Agreement.

45.    As a result of the default, the Aviation Security Agreement was accelerated per the terms of said contract. The principal remaining balance due and owing as of the acceleration date of July 24, 2008 was $5,410,890.24, plus late charges in the amount of $4,492.75, interest at per diem rate of $2,705.45 subsequent to July 24, 2008. *See* Verification of Mr. Craig Enright, Vice-President, Asset Management, Center Capital.

WHEREFORE, Center Capital prays for judgment in its favor and against Bill W. Schwyhart pursuant to his Personal Guaranty in the amount of fifty percent (50%) of the following:  the accelerated principal remaining balance of $5,410,890.24, late charges in the amount of $4,492.7, prejudgment interest at per diem rate of $2,705.45 subsequent to July 24, 2008, at the contract rate or the highest rate allowed by law until the date of judgment plus costs and attorneys' fees and any further relief as this Court deems just under the circumstances.

Dated: August 12, 2008

Respectfully Submitted,
SEITZ VAN OGTROP & GREEN, P.A.

*/s/ R. Karl Hill*
R. Karl Hill, Esq. (DE #2747)
Kevin A. Guerke, Esq. (DE #4096)
222 Delaware Avenue, Ste. 1500
P.O. Box 68
Wilmington, DE  19899
(302) 888-0600

*Of Counsel*:
Dennis A. Dressler, Esq.
Dressler | Peters, LLC
111 W. Washington, Suite 1900
Chicago, Illinois 60602
Phone: (312) 602-7360

*Attorneys for Center Capital Corporation*

11

AUG-07-2008  13:20        CENTER CAPITAL                    18606771888    P.001/001

STATE OF CONNECTICUT    )
                        )
COUNTY OF FARMINGTON    )

BEFORE ME, a notary public in and for Farmington County, Connecticut, on this day personally appeared Craig Enright, who being by me duly sworn, upon oath, says that he is the Vice President Asset Management at Center Capital Corporation, assignee of Key Equipment Finance, Inc., the plaintiff in the above entitled cause, and authorized to make this affidavit;

That the foregoing annexed account in favor of plaintiff and against defendants JR Lear 60-099, LLC; J.B. Hunt, LLC; Robert B. Thornton; and Bill W. Schwyhart are within the knowledge of affiant just and true; that as of July 24, 2008, one payment in the amount of $53,632.45 was past due and as a result the loan and security agreement was therefore accelerated and the principal remaining balance due and owing as of the acceleration date of July 24, 2008 was $5,410,890.24 plus late charges in the amount of $4,492.75, interest at per diem of $2,705.45 subsequent to July 24, 2008; and that all just and lawful offsets have been allowed.

In addition, defendants are liable for costs of repossession, any repair costs, and attorney fees and court costs. Further, the Collateral being a 1997 Learjet Model 60 Aircraft bearing FAA registration number N60AN is highly mobile and at risk of destruction without insurance which expires on or about May 22, 2008.

I have reviewed the Complaint and find it to be true and correct.

                              CENTER CAPITAL CORPORATION

                              By: Craig Enright
                              Its: Vice President, Asset Management

SUBSCRIBED AND SWORN TO BEFORE ME by the said Craig Enright, Vice President, Asset Management of Center Capital Corporation on this the _____ day of August, 2008.

                              Notary Publice, State of Connecticut

                              Linel Noble
                              NOTARY PUBLIC
                              State of Connecticut
                              My Commission Expires 7/31/2011

                                                      TOTAL P.001

# EXHIBIT "A"



EXHIBIT

A



# Aircraft Security Agreement

THIS AIRCRAFT SECURITY AGREEMENT ("Agreement") is made and entered into as of _____, 2006 by and between KEY EQUIPMENT FINANCE INC., a Michigan corporation having an office at 1000 South McCaslin Boulevard, Superior, CO 80027 ("Secured Party") and <u>JR LEAR 60-099, LLC</u>, a Limited Liability Company organized and existing under the laws of the State of Delaware and having its chief executive offices located at: 3333 Pinnacle Hills Pkwy, Penthouse 2, Rogers, AR, 72758-8952 ("Grantor"). Capitalized terms not otherwise defined herein have the meanings given in Article 9 hereof.

## RECITALS

A.    Pursuant to a Note by the Grantor, in favor of Secured Party, the Secured Party has agreed to make a term loan to the Grantor (the "Loan").

B.    As a condition precedent to the making of the Loan under the Note, the Grantor is required to execute and deliver this Agreement.

C.    Grantor is duly authorized to execute, deliver and perform this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce the Secured Party to make the Loan pursuant to the Note, the Grantor agrees, for the benefit of the Secured Party, as follows:

### ARTICLE 1 --    GRANT OF SECURITY INTEREST

Section 1.1    Grant of Security Interest. The Grantor, in consideration of the premises and other good and valuable consideration, receipt whereof is hereby acknowledged, and in order to secure the payment of the principal of and interest on the Loan according to its tenor and effect, and to secure (i) the payment of the principal of and interest on the Loan according to its tenor and effect; (ii) the payment of all other indebtedness under the Loan Documents and the performance and observance of all covenants and conditions contained in the Loan Documents; and (iii) the payment of all indebtedness under the Affiliate Loan Documents (including without limitation the loan thereunder) and the payment and observance of all covenants and conditions contained in the Affiliate Loan Documents (collectively referred to as the "Obligations"), does hereby convey, warrant, mortgage, assign, pledge, and grant a security interest to the Secured Party, its successors and assigns, in all and singular of the Grantor's right, title and interest in and to the properties, rights, interests and privileges described below and all proceeds thereof (all of which properties, rights, interests and privileges hereby mortgaged, assigned, pledged and granted or intended so to be, together with all proceeds thereof, are hereinafter collectively referred to as the "Collateral"):

a)    all of the Grantor's rights, title and interests in the Equipment (including the Airframe, any Propeller, the Engines, and the Parts) and substitutions and replacements of any of the foregoing;

b)    any and all service and warranty rights related to the Equipment, including the Engines, and claims under any thereof;

c)    all proceeds of any or all of the foregoing, whenever acquired, including the proceeds of any insurance maintained with respect to any of the foregoing and all proceeds payable or received with respect to any condemnation, expropriation, requisition or other Event of Loss, or the proceeds of any warranty;

d)    the Purchase Agreement, if any, and any bill of sale pursuant to which Grantor received title to the Aircraft, together with all rights, powers, privileges, options and other benefits of the Grantor under the Purchase Agreement and such bill of sale; and

e)    any and all present and future leases, subleases, management agreements, interchange agreements, charter agreements, purchase agreements and any other present and future agreements of any kind whatsoever relating to the Equipment or any part thereof, including any International Interest (and associated rights) therein or related thereto in favor of Grantor (but not any obligations, liabilities and/or duties of any kind whatsoever of Grantor or any other party, person or entity of any kind whatsoever in connection therewith or related thereto); provided, however, that the foregoing assignment and grant of a security interest and lien in this subclause (e) shall not be deemed in any way whatsoever as an agreement by the Secured Party to permit or allow the Grantor  (or any party, person or entity of any kind whatsoever) to enter into any such leases, subleases, management agreements, interchange agreements, charter agreements, purchase agreements and any other present and future agreements of any kind whatsoever, and the Grantor (or any party, person or entity of any kind whatsoever) shall only be allowed to enter into any of the foregoing in accordance with the terms of this Agreement. Grantor consents to the registration of the forgoing assignment of any International Interest (and associated rights) with the International Registry.

Section 1.2    Grant Effective. The conveyance, warranty, mortgage, assignment, pledge and security interest created hereunder in all of the foregoing Collateral and International Interest created hereunder in and relating to the Airframe and each Engine are effective and operative immediately, and will continue in full force and effect until the Grantor has made such payments and has duly, fully and finally performed and observed all of its agreements and covenants and provisions then required hereunder and under the other Loan Documents.

Section 1.3    Filing of Financing Statements and Continuation Statements; Consent to Registration. Grantor hereby authorizes Secured Party to file UCC financing statements and amendments thereto, listing Grantor as debtor, and Secured Party and/or its assigns, as secured party, and describing the Collateral, and assignments thereof and amendments thereto. The Grantor, at the request of the Secured Party, will execute and deliver to the Secured Party for filing, if not already filed, such financing statements or other documents and such continuation statements with respect to financing statements previously filed relating to the conveyance, warranty, mortgage, assignment, pledge and security interest created under this Agreement in the Collateral and execute, deliver, consent to, register or file any other documents that may be required in order to comply with the Act, the Cape Town Treaty or other applicable law or as may be specified from time to time by the Secured Party.  The Grantor hereby consents to the registration by the Secured Party of each International Interest in or relating to the Aircraft (including the Airframe and each Engine) assigned or created pursuant to this Agreement (including any Prospective International Interest with respect thereto) with the International Registry and covenants to effect the registration of such consent with the International Registry on the date of such assignment or creation.

Section 1.4    Delivery and Acceptance. SECURED PARTY WILL HAVE NO OBLIGATION TO ADVANCE ANY FUNDS TO GRANTOR UNLESS AND UNTIL SECURED PARTY HAS RECEIVED A GRANTOR'S ACKNOWLEDGMENT (Certificate of Acceptance) RELATING TO THE EQUIPMENT EXECUTED BY GRANTOR. Such Grantor's Acknowledgment will constitute Grantor's acknowledgment that such Equipment (a) was received by Grantor, (b) is satisfactory to Grantor in all respects, (c) is suitable for Grantor's purposes, (d) is in good order, repair and condition, (e) operates properly, and (f) is subject to all of the terms and conditions of the Loan Documents. Grantor's execution and delivery of a Grantor's Acknowledgment will be conclusive evidence as between Secured Party and Grantor that the Equipment described herein is in all of the foregoing respects satisfactory to Grantor, and Grantor will not assert any claim of any nature whatsoever against Secured Party based on any of the foregoing matters; provided,

however, that nothing contained herein will in any way bar, reduce or defeat any claim that Grantor may have against the seller or supplier of the Aircraft or any other person (other than Secured Party).

Section 1.5    Additional Documents, Information. Grantor will deliver to Secured Party (a) such organizational documents for Grantor as requested by Secured Party, (b) a certificate or certificates executed by an authorized representative of Grantor certifying that the execution, delivery and performance of this Agreement and the transactions contemplated hereby have been authorized by all necessary action on the part of the Grantor, (c) an incumbency certificate of the Grantor containing the name(s), title(s) and specimen signatures of the person(s) authorized to execute and deliver such documents on behalf of Grantor, (d) if required by Secured Party, a certificate of good standing for Grantor from the state of its organization, and (e) if required by Secured Party, an opinion of counsel for Grantor in form and substance satisfactory to Secured Party and its counsel.

ARTICLE 2 --    COVENANTS

Section 2.1    Registration and Operation. (a) Grantor, at its own cost and expense, will cause the Aircraft to be duly registered in the name of Grantor as owner and subject only to Secured Party's first priority security interest and International Interest, and at all times thereafter to remain duly registered, in the name of the Grantor as owner with the FAA pursuant to the Act.

b) Grantor will not use the Aircraft in violation of any law or any rule, regulation or order (including those concerning alcoholic beverages or prohibited substances) of any governmental authority having jurisdiction (domestic or foreign) or in violation of any airworthiness certificate, license or registration relating to any item of Equipment issued by such authority, except to the extent such violation is not material or the validity or application of any such law, rule, regulation or order is being contested in good faith and by appropriate proceedings (but only so long as such proceedings do not, in the Secured Party's opinion, involve any material danger of the sale, forfeiture or loss of such item of Equipment, or any interest, including the Secured Party's security interest or International Interest, therein or related thereto).

c) Grantor will operate the Aircraft solely in the conduct of its business and/or for commercial purposes (and not for consumer, home or family purposes) and in such configuration as authorized by the FAA. Grantor will not operate the Aircraft or permit the Aircraft to be operated (i) at any time or in any geographic area when or where insurance required by this Agreement is not in effect, (ii) in a manner or for any time period such that a Person other than Grantor will be deemed to have "operational control" of the Aircraft except with the prior written consent of Secured Party, (iii) for the carriage of persons or property for hire except with the prior written consent of Secured Party or (iv) for the transport of mail or contraband. Possession, use and maintenance of the Aircraft will be at the sole risk and expense of Grantor and the Aircraft will be based at the Primary Hangar Location. Grantor will deliver to Secured Party a written waiver of any Lien or claim of Lien against the Aircraft that is or could be held by any landlord (other than a governmental entity) or mortgagee of any hangar or storage facility where the Aircraft is or will be located. Grantor will not permit the Aircraft to be based away from its designated Primary Hangar Location for a period in excess of thirty (30) days without Secured Party's prior written consent. Grantor will cause the Aircraft to be operated at all times by duly qualified pilots who (x) are supplied by Grantor, (y) hold at least a valid commercial airman certificate and instrument rating and any other certificate, rating, type rating or endorsement appropriate to the Aircraft, purpose of flight, condition of flight or as otherwise required by the Federal Aviation Regulations or other applicable law or regulation, and (z) meet the requirements established and specified by the insurance policies required hereunder and by the FAA. GRANTOR WILL NOT OPERATE, USE OR LOCATE THE AIRCRAFT, OR PERMIT OR ALLOW THE AIRCRAFT TO BE OPERATED, USED OR LOCATED, OUTSIDE THE CONTINENTAL UNITED STATES, ALASKA OR CANADA WITHOUT THE PRIOR WRITTEN CONSENT OF SECURED PARTY.

d) Grantor will execute and deliver and file with the FAA on or prior to the date hereof an Irrevocable De-Registration and Export Request Authorization with respect to the Aircraft in the form attached hereto as Exhibit B.

Section 2.2    Records and Reports. The Grantor will cause all records, logs, manuals, certificates, date and inspection, modification, maintenance, engineering, technical and overhaul records (including computerized data, records and other materials), including those required by the FAA and any other governmental authority having jurisdiction to be maintained, in the English language, in respect of each item of Equipment. Grantor will promptly furnish or cause to be furnished to the Secured Party such information as may be required to enable the Secured Party to file any reports required to be filed by the Secured Party with any governmental authority because of the Secured Party's interests in any item of Equipment.

Section 2.3    Maintenance. Grantor, at its own cost and expense, will fly, maintain, inspect, service, repair, overhaul and test the Aircraft (including each Engine of same), or will cause the Aircraft to be flown, maintained, inspected, configured, serviced, repaired, overhauled and tested, in passenger configuration pursuant to an approved FAA maintenance program and in accordance with (a) all maintenance manuals initially furnished with the Aircraft, including any subsequent amendments or supplements to such manuals issued by the manufacturer from time to time, (b) all mandatory "Service Bulletins" issued, supplied, or available by or through the manufacturer and/or the manufacturer of any Engine or part with respect to the Aircraft having a compliance date during the term of the Note and up to twelve (12) months thereafter, and (c) applicable law, including, all airworthiness directives issued by the FAA or similar regulatory agency having jurisdictional authority, and causing compliance with such directives or circulars to be completed through corrective modification or operating manual restrictions, having a compliance date during the term of the Note and twelve (12) months thereafter. Grantor will maintain the Aircraft in good and safe working order and in substantially the same condition as when originally delivered to Grantor, ordinary wear and tear excepted. Grantor will cause the Aircraft to be subject to an FAA Airworthiness Certificate at all times other than when the Aircraft as a whole is the subject of an Event of Loss. Grantor will maintain, or will cause to be maintained, in the English language, all records, logs and other materials required by the manufacturer thereof for enforcement of any warranties or by the FAA. All maintenance procedures required hereby will be undertaken and completed in accordance with the manufacturer's recommended procedures, and by properly trained, licensed and certified maintenance sources and maintenance personnel, so as to keep the Aircraft and each Engine in as good operating condition as when originally delivered to Grantor, ordinary wear and tear excepted, and so as to keep the Aircraft in such operating condition as may be necessary to enable the airworthiness certification of such Aircraft to be maintained in good standing at all times under the Act. Grantor shall enter into a service and maintenance contract in form and substance satisfactory to Secured Party with an FAA approved maintenance provider acceptable to Secured Party to provide for the maintenance, repair and overhaul of the Aircraft.

Section 2.4    Replacement of Parts. The Grantor, at its own cost and expense, will promptly cause the replacement of all Parts which may from time to time become worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever. In addition, the Grantor, at its own cost and expense, may permit the removal in the ordinary course of maintenance, service, repair, overhaul or testing of any Parts, whether or not worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use; provided, however, that the Grantor, at its own cost and expense, will cause such Parts to be replaced as promptly as possible. All replacement Parts must be free and clear of all Liens (except for Permitted Liens), will be in as good operating condition as, and will have a value and utility at least substantially equal to, the Parts replaced, assuming such replaced Parts were in the condition and repair required to be maintained by the terms hereof. The Grantor's rights, title and interests in all Parts at any time removed from any item of Equipment will remain subject to the Lien of this Agreement no matter where located, until such time as such Parts will be replaced by Parts which have been incorporated in such item of Equipment and which meet the requirements for replacement Parts specified above. Immediately upon any replacement Part becoming incorporated or installed in or attached to any item of Equipment as above provided, without further act, (a) the Grantor's rights, title and interests in such replacement Part will become subject to the Lien of this Agreement, and such replacement Part will be deemed part of such item of Equipment for all purposes hereof to the

same extent as the Parts originally incorporated in such item of Equipment, and (b) the Grantor's rights, title and interests in the replaced Part will be released from the Lien of this Agreement and the replaced Part will no longer be deemed a Part hereunder. The Grantor will, not less often than once during each calendar year, provide to the Secured Party written confirmation, in form and content acceptable to the Secured Party, that the Grantor has complied with the provisions of this Section 2.4.

Section 2.5    Alterations, Modifications and Additions. The Grantor, at its own cost and expense, will cause such alterations and modifications in and additions to the Equipment to be made as may be required from time to time to meet the standards of the FAA and of any other governmental authority having jurisdiction and to maintain the certificate of airworthiness for the Aircraft; provided, however, that the validity or application of any such law, rule, regulation or order may be contested in good faith by appropriate proceedings (but only so long as such proceedings do not, in the Secured Party's opinion, involve any material danger of sale, forfeiture or loss of any item of Equipment, or any interest, including the Secured Party's security interest or International Interest, therein or related thereto). In addition, the Grantor, at no cost or expense to the Secured Party, may, from time to time, cause such alterations and modifications in and additions to any item of Equipment to be made as the Grantor may deem desirable; provided, that no such alteration, modification and addition will (a) materially diminish the value, utility or condition of such item of Equipment below the value, utility or condition thereof immediately prior to such alteration, modification or addition, assuming the item of Equipment was then of the value and utility and in the condition required to be maintained by the terms of this Agreement, or (b) cause the airworthiness certification of the Aircraft to cease to be in good standing under the Act. The Grantor's rights, title and interests in all Parts added to the Aircraft, the Airframe, any Propeller or an Engine as the result of such alteration, modification or addition will, without further act, be subject to the Lien of this Agreement. Notwithstanding the foregoing sentence of this Section 2.5, so long as no Event of Default has occurred and is continuing, the Grantor may remove any Part added to the Aircraft, Airframe, any Propeller or an Engine as contemplated in this Section 2.5 if (x) such Part is in addition to, and not in replacement of or substitution for, any Part originally incorporated in such item of Equipment at the time of delivery thereof or any Part in replacement of or substitution for any such Part, (y) such Part is not required to be incorporated or installed in or attached or added to such item of Equipment pursuant to the terms of this Article 2, and (z) such Part can be removed from such item of Equipment without causing any material damage thereto. Upon the removal of any Part as above provided, such Part will be released from the Lien of this Agreement.

Section 2.6    Maintenance of Other Engines. Each engine which does not constitute an Engine, but which is installed on the Airframe from time to time, will be maintained, operated, serviced, repaired, overhauled, altered, modified and tested in accordance with Section 2.3 to the same extent as if it were an Engine.

Section 2.7    Payment of Obligations. The Grantor hereby agrees that it will promptly pay or cause to be paid when due all taxes, assessments and other governmental charges imposed with respect to the Collateral (except to the extent being contested in good faith and by appropriate proceedings which do not involve any material risk of loss or forfeiture).

Section 2.8    Change of Name or Location. Grantor will give Secured Party thirty (30) days prior written notice of any relocation of its chief executive office and of any change in its name, identity or state of organization. At least 10 Business Days prior to the occurrence of any such change or relocation, Grantor will (a) duly file appropriate financing statements in all applicable filing offices, and (b) deliver to Secured Party copies of the form of such financing statements. Grantor will hangar the Aircraft at: Lancaster Airport, 500 Airport Rd., Lititz, PN 17543-7751 ("Primary Hangar Location") Grantor will supply Secured Party with a waiver of any Lien or claim of Lien against the Aircraft which could be held by any landlord or mortgagee of the hangar or future aircraft storage facility. Grantor will not remove the Aircraft, or permit the Aircraft to be removed, from its designated home airport for a period in excess of thirty (30) days, without the prior written consent of Secured Party.

Section 2.9    Inspection. Secured Party will have the right, but not the duty, to inspect the Aircraft, any component thereof, and the Records at any reasonable time and from time to time, wherever the same may be located, upon reasonable prior written notice to Grantor unless a Default or Event of Default has occurred and is continuing, in which case no prior notice will be required. At Secured Party's request, Grantor will confirm to Secured Party the location of the Aircraft and will, at any reasonable time and from time to time, make the Aircraft and/or the Records available to Secured Party for inspection.

Section 2.10    Aircraft Registration; International Registry. Grantor will not change the United States Registration Number of the Aircraft without Secured Party's prior written consent. Grantor will cause to be filed with the FAA an FAA Bill of Sale, the Agreement, an FAA application for aircraft registration and such other documents as may be required under the Act or as otherwise necessary or prudent to cause the Aircraft to be and remain duly registered at all times with the FAA in the name of Grantor as owner and subject only to Secured Party's first priority perfected security interest. Grantor will, at all times, keep on board the Aircraft a current and valid Registration Application or Certificate of Aircraft Registration. Grantor will cause each International Interest in favor of the Secured Party in or relating to the Aircraft (including in the Airframe and each Engine) created by this Agreement and, if the Aircraft is acquired by Grantor on or after March 1, 2006, the contract of sale (i.e. the bill of sale) transferring title in the Aircraft to Grantor, in each case, to be validly registered with the International Registry with such International Interests having priority over all other registered or un-registered International Interests in the Airframe and Engines.  Grantor will discharge or cause to be discharged any International Interest or Prospective International Interest in or relating to the Aircraft (including the Airframe and the Engine) not consented to in writing by Secured Party. Further, Grantor will not consent to any International Interest or Prospective International Interest in or relating to the Aircraft unless prior approval is obtained from the Secured Party in writing.

Section 2.11    Financial and Other Data. During the term of the Note and so long as any amounts are outstanding thereunder, Grantor agrees to furnish Secured Party:

a)    as soon as available, and in any event within ninety (90) days after the last day of each fiscal year of Grantor, a copy of the balance sheet of Grantor as of the end of such fiscal year, and related statements of income and retained earnings of Grantor for such fiscal year, all in reasonable detail prepared in accordance with generally accepted accounting principles consistently applied and certified by an independent certified public accounting firm of recognized standing and which is reasonably acceptable to Secured Party, each on a comparative basis with corresponding statements for the prior fiscal year;

b)    within forty-five (45) days after the last day of each fiscal quarter of Grantor (except the last fiscal quarter for any fiscal year), a copy of the balance sheet of Grantor as of the end of each such quarter, and statement of income and retained earnings covering the fiscal year to date of Grantor, each on a comparative basis with the corresponding period of the prior year, all in reasonable detail and certified by the treasurer or principal financial officer of Grantor;

c)    within thirty (30) days after the date on which they are filed, all reports, forms and other filings, if any, required to be made by Grantor to the Securities and Exchange Commission ("SEC") or (in respect of the Aircraft or this Agreement) the FAA, including any SEC Forms 10-K and 10-Q and related reports or documents. All credit, financial and other information provided by Grantor or at Grantor's direction is, and all such information hereafter furnished will be, true, correct and complete in all material respects;

d)    all such information described in Section 2.11 (a), (b) and (c) above relating to any Guarantor; and

e)    promptly, such additional financial and other information as Secured Party may from time to time reasonably request

Section 2.12    Late Payments. All amounts payable to Secured Party hereunder that are not paid when due will accrue interest at the Default Rate for the number of days actually elapsed from the due date until paid in full. In addition, if Grantor fails to perform any of its obligations contained herein, Secured Party may (but will not be obligated to) itself perform such obligations, and the amount of the reasonable costs and expenses of Secured Party incurred in connection with such performance, together with interest on such amount from the date said amounts are expended at the Default Rate, will be payable by Grantor to Secured Party upon demand. No such performance by Secured Party will be deemed a waiver of any rights or remedies of Secured Party or be deemed to cure any Default of Grantor hereunder.

Section 2.13    Transaction Expenses. Grantor will pay all actual and reasonable fees, costs and expenses incurred by Secured Party in connection with this Agreement and the other Loan Documents, whether or not the transactions contemplated hereby are consummated, including appraisal fees, Secured Party's counsel fees and expenses, FAA counsel fees and expenses, FAA, International Registry and UCC title and lien searches, reports, filing, registration and recording fees, charges and taxes. Grantor also agrees to pay all fees and expenses of Secured Party's counsel, FAA counsel and all other third parties who are engaged by Secured Party to update any FAA, International Registry or UCC title and/or lien reports and/or to review, file, register and record any and all documents and instruments as required by Secured Party, the International Registry or the FAA at any time during which any of the Obligations remain outstanding.

## ARTICLE 3 --    EVENTS OF LOSS

Section 3.1    Event of Loss with Respect to the Aircraft. Grantor will deliver to Secured Party written notice of the occurrence of any Event of Loss with respect to the Aircraft within five (5) days after the occurrence thereof. On the next Note Payment Date following such Event of Loss Grantor will pay to Secured Party an amount equal to the sum of (A) all amounts then due hereunder, under any other Loan Documents, and under the Note, plus (B) the Loss Value of the Aircraft determined as of such Note Payment Date. Upon payment in full by the Grantor of all such amounts, the Aircraft having suffered the Event of Loss will be released from the lien of this Agreement and the Secured Party will execute and deliver, at the Grantor's cost and expense, such instruments as may be reasonably required to evidence such release.

Section 3.2    Event of Loss with Respect to an Engine. Grantor will deliver to Secured Party written notice of the occurrence of any Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the Airframe within five (5) days after the occurrence thereof. Within thirty (30) days after the occurrence of such Event of Loss, Grantor will convey to Secured Party, as replacement for the Engine with respect to which such Event of Loss occurred, a security interest to and International Interest in an engine that is (a) the same make and model number as the Engine suffering the Event of Loss, (b) free and clear of all Liens other than Permitted Liens, (c) of a value, utility, and useful life at least equal to, and in as good an operating condition as, the Engine suffering the Event of Loss, assuming such Engine was of the value and utility and in the condition and repair required by the terms hereof immediately prior to the occurrence of such Event of Loss. Grantor, at its sole cost and expense, will furnish Secured Party with such documents to evidence the conveyance and the International Interest and shall make such filings and registrations with the FAA and the International Registry (and hereby consents to such registrations with the International Registry) with respect thereto, in each case, as Secured Party requests. Upon full compliance by Grantor with the terms of this paragraph, Secured Party will release Secured Party's right, title and interest, if any, in and to the Engine suffering the Event of Loss. Each replacement engine will, after such conveyance, be deemed an "Engine" as defined herein and will be deemed part of the same Aircraft as was the replaced Engine. No Event of Loss with respect to an Engine will result in any reduction or delay in the payment of any amounts due under the Note or hereunder, or otherwise relieve Grantor of any obligation under this Agreement.

Section 3.3    Application of Payments from Governmental Authorities or other Persons. Any payments (other than insurance proceeds, the application of which is provided for in Article 4), received at any time by the Secured Party or Grantor from any governmental authority or other Person with respect to any Event of Loss, or from a governmental authority with respect to an event which does not constitute an Event of Loss, will be applied as follows:

a)    Such payments will be applied in reduction of the Grantor's obligation to pay the Loss Value, if not already paid by the Grantor, or, if already paid by the Grantor, will be applied to reimburse the Grantor for its payment of such amounts. The balance, if any, of such payment remaining thereafter, and after payment of all amounts then due and payable under the Loan Documents, will be paid to the Grantor.

b)    If such payments are received with respect to a requisition for use by the government which does not constitute an Event of Loss, such payments may be retained by the Grantor.

c)    Notwithstanding the foregoing provisions of this Section 3.3, any payments (other than insurance proceeds, the application of which is provided for in Article 4) received at any time by the Secured Party from any governmental authority or other Person with respect to any Event of Loss, which are payable to the Grantor if at the time of such payment an Event of Default or Default has occurred and is continuing, in which event all such amounts will be paid to and held by the Secured Party as security for the Obligations or, at the Secured Party's option, applied by the Secured Party toward the payment of such Obligations at the time due in such order of application as the Secured Party may from time to time elect. At such time as no Event of Default or Default has occurred and is continuing, all such amounts at the time held by the Secured Party in excess of the amount, if any, the Secured Party elected to apply as above provided will be paid to the Grantor.

Section 3.4    Rights Assigned. In furtherance of the foregoing, the Grantor hereby irrevocably assigns, transfers and sets over to the Secured Party all rights of the Grantor to any award or payment received by or payable to the Grantor on account of an Event of Loss.

## ARTICLE 4 --    INSURANCE

Section 4.1    Insurance. Grantor, at its sole cost and expense, will maintain or cause to be maintained:

a)    aircraft liability insurance covering claims arising from the use or operation of the Aircraft in or over any area (including contractual liability and bodily injury and property damage liability) in an amount not less than the greater of (i) $50,000,000 per occurrence, or such higher amounts as are required by law in the geographic location or country in or over which the Aircraft is flown, operated or located; and (ii) the amounts of aircraft liability insurance from time to time applicable to aircraft operated by Grantor (whether now owned or leased) of the same type as the Aircraft;

b)    cargo liability insurance sufficient to cover the maximum value of cargo on the Aircraft at any one time if Grantor is engaged in transporting property of others;

c)    all-risk aircraft physical damage insurance covering the Aircraft in motion and not in motion, in flight and on the ground, and the Engine and all Parts while attached to or removed from the Airframe, in an amount not less than the lesser of the full insurable value of the Aircraft or the then Loss Value;

d)    for all locations which the Aircraft travels to and through: war and allied perils insurance to cover the perils of (i) war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power, (ii) strikes, riots, civil commotions of labor disturbances, (iii) any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional, (iv) any vandalism, malicious act or act of sabotage, (v) confiscation, naturalization, seizure, restraint, detention, diversion, appropriation, requisition for title or use by or

under the order of any government (whether civil, military or de facto) or public or local authority and (vi) hijacking, or any unlawful seizure or wrongful exercise of control of the crew in flight; and

e)  such other insurance against such other risks as is usually carried by similar companies owning or leasing and operating aircraft similar to the Aircraft. All such insurance will be maintained with insurers of recognized reputation and responsibility (reasonably satisfactory to Secured Party) having a rating not less than A-: from A.M. Best, or other rating approved by Secured Party. All insurance policies will be in a form acceptable to Secured Party.

f)  If Grantor fails to maintain insurance as herein provided, Secured Party may, at its option, provide such insurance, and Grantor will, upon demand, reimburse Secured Party for the cost thereof.

Section 4.2    Requirements. All insurance policies required hereunder will: (a) require 30 days' prior written notice to Secured Party of cancellation, non-renewal or material change in coverage (any such cancellation, non-renewal or change, as applicable, not being effective until the thirtieth (30th) day after the giving of such notice) except, in the case of cancellation for non-payment of premium, only 10 days' prior written notice shall be required and in the case of cancellation of the coverages described under Section 4.1(d), notice as established under the applicable endorsements, (b) name the Additional Insureds (as hereinafter defined) as an additional insured under the liability coverage and name Additional Insureds as sole loss payee under the physical damage insurance coverage; (c) not require contributions from other policies held by the Additional Insureds; (d) waive any right of subrogation against the Additional Insureds; (e) in respect of any liability of any of the Additional Insureds, except for the insurers' salvage rights in the event of a loss or damage, waive the right of such insurers to setoff, to counterclaim or to any other deduction, whether by attachment or otherwise, to the extent of any monies due the Additional Insureds under such policies; (f) permit but not require that any of the Additional Insureds pay or be liable for any premiums with respect to such insurance covered thereby; (g) provide for coverage in all areas in which the Aircraft is permitted to fly under the terms hereof; (h) provide that all of the provisions thereof, except the limits of liability, will operate in the same manner as if there were a separate policy covering each Additional Insured; and (i) contain breach of warranty provisions providing that, in respect of the interests of the Additional Insureds in such policies, the insurance will not be invalidated by any action or inaction of Grantor or any other person (other than an Additional Insured, as to itself only) and will insure the Additional Insureds regardless of any breach or violation of any warranty, declaration or condition contained in such policies by Grantor or by any other person (other than an Additional Insured, as to itself only). As used herein, the term "Additional Insureds" means "KeyCorp and its subsidiaries and affiliated companies including Key Equipment Finance Inc., and their respective successors and/or assigns."

Section 4.3    No Right to Self-insure. Grantor will not self-insure (by deductible, premium adjustment, or risk retention arrangement of any kind) the insurance required to be maintained hereunder, except to the extent of deductibles usually and customarily maintained by companies engaged in the same or similar business as Grantor and operating the same or similar aircraft and approved by Secured Party.

Section 4.4    Notice of Loss or Damage; Application of Proceeds. Grantor will give Secured Party prompt notice of any damage to or loss of, the Aircraft, or any part thereof. Insurance proceeds for partial loss or damage to the Aircraft or any part thereof will be applied as Secured Party in its sole discretion determines.

Section 4.5    Reports, Policies, Certificates. Not less than fifteen (15) days prior to the expiration dates of the policies obtained by Grantor pursuant to this section, Grantor will deliver to the Additional Insureds certificate(s) of insurance evidencing that the coverage required hereunder has been obtained beyond such expiration date, together with a certificate certifying that such insurance complies with the terms hereof, accompanied, if requested by Secured Party, by the applicable policies and report(s) of insurance broker(s) or underwriter(s) as to the conformity of such coverage with such requirements; provided, however, that the Additional Insureds will be under no duty either to ascertain the existence of or to examine any certificates or reports or to advise Grantor if such insurance does not comply with the requirements of this section.

Section 4.6    Attorney-in-Fact. Grantor irrevocably appoints Secured Party (and any assignee, mortgagee and/or lender of the Secured Party) its attorney-in-fact to file, settle, or adjust, and receive payment of, claims under any insurance policy required hereby and to endorse Grantor's name on any checks, drafts or other instruments in payment of such claims, and to otherwise act in Grantor's name and on its behalf to make, execute, deliver and file any instruments or documents necessary in connection therewith, and to take any action as Secured Party (and any such assignee, mortgagee and/or lender) deems necessary or appropriate to obtain the benefits intended to inure to Secured Party under this Section 4. To the extent appropriate or permissible under applicable law, such appointment is coupled with an interest, is irrevocable, and will terminate only upon payment in full of the obligations set forth in this Agreement and/or any agreements, documents or instruments related thereto. Notwithstanding the foregoing, unless a Default or Event of Default has occurred and is continuing hereunder, Secured Party agrees that it will not exercise its powers as attorney in fact with respect to claims for damages in amounts payable under such policies of insurance which are less than the $100,000.00.

## ARTICLE 5 --    EVENTS OF DEFAULT AND REMEDIES

Section 5.1    Events of Default; Remedies. As used herein, the term "Event of Default" means any of the following events·

a)  Grantor fails to pay any installment of principal or interest on the Note or any amount due hereunder within ten (10) days after the same has become due;

b)  Grantor fails to keep in full force and effect any of the insurance required under this Agreement, or operates the Aircraft at a time when, or at a place in which, such insurance is not in effect;

c)  Grantor fails to perform or observe any other covenant, condition or agreement required to be performed or observed by it hereunder or under any agreement, document or certificate related hereto, and such failure continues for ten (10) days after written notice thereof from Secured Party to Grantor;

d)  Grantor defaults in the payment or performance of any other obligation to Secured Party or any affiliated Person controlling, controlled by or under common control with Secured Party;

e)  any representation or warranty now or hereafter made or information now or hereafter provided by Grantor, including any financial information, proves to be or to have been false, inaccurate, or misleading in any material respect;

f)  the commencement of any bankruptcy, insolvency, arrangement, reorganization, receivership, liquidation or other similar proceeding by or against Grantor or any of its properties or businesses (which, in the case of a proceeding commenced against Grantor, has not been dismissed within sixty (60) days of the filing thereof), the appointment of a trustee, receiver, liquidator or custodian for Grantor or any of its properties or businesses, or the making by Grantor of a general assignment or deed of trust for the benefit of creditors;

g)  Grantor defaults in any obligation to a third party, as a result of which such third party has the right to accelerate Grantor's obligations to such third party;

h) Grantor does or agrees to (i) sell, transfer or dispose of all or substantially all of its stock or other ownership interests, assets or property, (ii) merge with or into any other entity or engage in any form of corporate reorganization, (iii) become the subject of, or engage in, a leveraged buy-out or (iv) terminate its existence by merger, consolidation or sale of substantially all of its assets or otherwise;

i) if Grantor is a privately held entity, more than 50% of Grantor's voting capital stock or ownership interests or effective control of Grantor's voting ownership interests or capital stock issued and outstanding from time to time is not retained by the holders of such stock or interests on the date of this Agreement;

j) if Grantor is a publicly held corporation, there is a change in the ownership of Grantor's stock such that Grantor is no longer subject to the reporting requirements of the Securities Exchange Act of 1934 or no longer has a class of equity securities registered under Section 12 of the Securities Act of 1933;

k) Grantor, if an individual, dies or, if a legal entity, is dissolved;

l) Grantor becomes insolvent or generally fails to pay its debts as they become due or Grantor admits in writing its inability to pay its debts or obligations generally as they become due;

m) Secured Party determines, in its sole discretion and in good faith, that there has been a material adverse change in the business, operations or financial condition of the Grantor since the date of this Agreement or that Grantor's ability to make any payment hereunder promptly when due or otherwise comply with the terms of this Agreement or any other agreement between Secured Party and Grantor is impaired;

n) any event or condition set forth in subsections (d) through (m) of this section occurs with respect to any Guarantor or other Person responsible, in whole or in part, for payment or performance of Grantor's obligations under this Agreement;

o) any event or condition set forth in subsections (d) through (m) of this section occurs with respect to an Affiliate, any affiliated Person, or any Person controlling, controlled by or under common control with Grantor;

p) any of the liens created or granted hereby, or intended to be granted or created hereby, to Secured Party fails to be valid, first priority perfected liens subject to no prior or equal lien; and

q) an additional Lien (other than a Permitted Lien) attaches to the Equipment or any of the other Collateral, the Equipment or any of the other Collateral becomes subject to risk of seizure or forfeiture or Grantor creates in favor of or provides for the benefit of any Person (other than the Secured Party) or registers or consents to the registration with the International Registry of, an International Interest or a Prospective International Interest in or relating to the Airframe or Engines, or provides a DERA in favor of any Person with respect to the Aircraft other than Secured Party.

Section 5.2    Remedies. Upon the occurrence of any Event of Default, Secured Party may declare any or all of the Obligations to be immediately due and payable, without demand or notice to Grantor or any Guarantor, and Secured Party will have the immediate right to enforce its rights hereunder. The Obligations accelerated thereby will bear interest (both before and after any judgment) until paid in full at the Default Rate. Should there occur a Default, and if a voluntary or involuntary petition under the United States Bankruptcy Code is filed by or against Grantor while such Default remains uncured, the Secured Obligations will be automatically accelerated and due and payable, and interest thereon at the Default Rate will automatically apply as of the date of the first occurrence of the Default, without any notice, demand or action of any type on the part of Secured Party (including any action evidencing the acceleration or imposition of the Default Rate). The fact that Secured Party has, prior to the filing of the voluntary or involuntary petition under the United States Bankruptcy Code, acted in a manner which is inconsistent with the acceleration and imposition of such rate will not constitute a waiver of this provision or estop Secured Party from asserting or enforcing Secured Party's rights hereunder. In addition, Secured Party may exercise any one or more of the following remedies, as Secured Party in its sole discretion elects:

a) Proceed by appropriate court action, either at law or in equity, to enforce performance by Grantor of this Agreement or to recover damages, including incidental and consequential damages, for the breach hereof.

b) Cause Grantor, at its expense, promptly to return the Aircraft to Secured Party at such place as Secured Party designates.

c) Enter upon any premises where the Aircraft is located and, without notice to Grantor, take immediate possession of and remove the same, together with any Engines and Parts, by self-help, summary proceedings or otherwise without any liability of any kind whatsoever on the part of Secured Party for or by reason of such entry or taking of possession.

d) Sell or otherwise dispose of the Aircraft by public or private sale, with or without notice to the Grantor, and without having the Aircraft present at the place of sale and in such manner as it deems appropriate. Secured Party may elect to purchase the Aircraft at such sale for a price not less than the highest bona fide bid given by a Person unrelated to Grantor. Grantor waives all of its rights under laws governing such sale to the extent permitted by law. Grantor hereby agrees that ten working days' prior notice to Grantor of any public sale or of the time after which a private sale may be negotiated will be conclusively deemed commercially reasonable notice.

e) Hold, keep idle, lease, de-register, export or use or operate all or part of the Aircraft without any liability whatsoever and store the Aircraft on Grantor's premises pending release or sale or hold a sale on such premises without liability for rent or costs whatsoever.

f) Exercise any other right or remedy available to Secured Party under applicable law.

In addition, Grantor will be liable for all costs, charges and expenses, including reasonable legal fees and disbursements and any appraisal costs, incurred by Secured Party by reason of the occurrence of any Event of Default or in enforcing Secured Party's rights under the Agreement, before or in connection with litigation and for any deficiency in the disposition of the Aircraft.

Section 5.3    Remedies Cumulative. Each and every right, power and remedy herein specifically given to the Secured Party or otherwise in this Agreement or the other Loan Documents are cumulative and are in addition to every other right, power and remedy herein or therein specifically given or now or hereafter existing at law, including upon an Event of Default any applicable remedies specified under the Cape Town Treaty available to Secured Party, in equity or by statute, and each and every right, power and remedy whether specifically herein or therein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Secured Party, and the exercise or the beginning of the exercise of any power or remedy will not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy. No delay or omission by the Secured Party in the exercise of any right, power or remedy or in the pursuit of any remedy will impair any such right, power or remedy or be construed to be a waiver of any default on the part of the Grantor to be an acquiescence therein.

Section 5.4    Grantor's Waiver of Rights. To the extent permitted by applicable law, the Grantor hereby waives any rights, now or hereafter conferred by statute or otherwise, which might limit or modify any of the rights or remedies of the Secured Party under or in connection with this Article 5, including any right to require Secured Party to sell, lease or otherwise use the Aircraft in mitigation of Secured Party's damages as set forth herein.

Section 5.5    Power of Attorney. The Grantor hereby appoints the Secured Party or its designated agent as such Grantor's attorney-in-fact, irrevocably, with full power of substitution, to collect all payments with respect to the Collateral due and to become due under or arising out of this

Agreement or any other Loan Document, to receive all moneys (including proceeds of insurance) which may become due under any policy insuring the Collateral and all awards payable in connection with the condemnation, requisition or seizure of the Collateral, or any part thereof, to execute proofs of claim, to endorse drafts, checks and other instruments for the payment of money payable to the Grantor in payment of such insurance moneys and to do all other acts, things, take any actions (including the filing of financing statements or other documents) or institute any proceedings which the Secured Party may deem to be necessary or appropriate at any time to protect and preserve the interest of the Secured Party in the Collateral, or in this Agreement and the other Loan Documents.

Section 5.6    <u>Distribution of Amounts Received After an Event of Default</u>. All payments received and amounts realized by the Secured Party with respect to the Collateral after an Event of Default has occurred and is continuing (whether realized from the exercise of any remedies pursuant to this Article 5 or otherwise), as well as payments or amounts then held by the Secured Party as part of the Collateral, will be distributed by the Secured Party in the following order of priority:

a)    First, so much of such payments and amounts as are required to pay the expenses paid by the Secured Party pursuant to this Article 5 (to the extent not previously reimbursed) will be paid to the Secured Party;

b)    Second, so much of such payments or amounts as are required to pay the amounts payable to any Indemnified Party (to the extent not previously reimbursed) will be paid to such Indemnified Party;

c)    Third, so much of such payments or amounts remaining as are required to pay in full the aggregate unpaid principal amount of the Loan, the accrued but unpaid interest thereon to the date of distribution, indemnification for funding losses, if any, and all other Obligations, will be paid to the Secured Party; such payments or amounts to be applied to the amounts so due, owing or unpaid in such order of application as the Secured Party may from time to time elect; and

d)    Fourth, the balance, if any, of such payments or amounts remaining thereafter will be paid to the Grantor.

Section 5.7    <u>Suits for Enforcement</u>. In case of any default in payment of the Loan beyond any applicable grace period, then, regardless of whether or not the Loan has then been accelerated, the Secured Party may proceed to enforce the payment of the Loan. The Grantor agrees that, in the case of any default in the payment of the Loan, it will pay the Secured Party such further amount as is sufficient to pay the costs and expenses of collection, including reasonable attorneys' fees and expenses.

ARTICLE 6 --    REPRESENTATIONS AND WARRANTIES

Section 6.1    <u>Representations, Warranties and Covenants of Grantor</u>. Grantor represents, warrants and covenants that:

a)    Grantor's exact legal name is as set forth in the preamble of this Agreement and Grantor (i) is, and will remain, duly organized, existing and in good standing under the laws of the State set forth in the preamble of this Agreement, (ii) has its chief executive offices at the location set forth in such paragraph, (iii) is, and will remain, duly qualified and licensed in every jurisdiction wherever necessary to carry on its business and operations, (iv) is and will continue to be a "citizen of the United States", within the meaning of the Title 49, Subtitle VII of the United States Code, as amended and recodified, and the regulations thereunder so long as any Obligations are due to Secured Party under the Loan Documents, (v) has not, within the previous six (6) years, changed its name, done business under any other names, changed its chief place of business from its present location, or merged or consolidated with any other entity except as previously disclosed to Secured Party, and (vi) is not insolvent within the meaning of any applicable state or federal law;

b)    Grantor has full power, authority and legal right to enter into, and to perform its obligations under, each of the Loan Documents and has full right and lawful authority to grant the security interest described in this Agreement;

c)    The Loan Documents have been duly authorized, executed and delivered by Grantor and constitute legal, valid and binding agreements enforceable under all applicable laws in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

d)    No approval, consent or withholding of objections is required from any governmental body, agency, authority or instrumentality or any other entity with respect to the entry into, or performance by, Grantor of any of the Loan Documents, except such as have already been obtained;

e)    The entry into, and performance by, Grantor of the Loan Documents will not (i) violate any of Grantor's organizational documents or any judgment, order, law or regulation applicable to Grantor, or (ii) result in any breach of, constitute a default under, or result in the creation of, any lien, claim or encumbrance on any of Grantor's property (except for liens in favor of Secured Party) pursuant to, any indenture mortgage, deed of trust, bank loan, credit agreement, or other agreement or instrument to which Grantor is a party;

f)    There are no suits or proceedings pending or, to Grantor's knowledge, threatened in court or before any commission, board or other administrative agency against or affecting Grantor which could, in the aggregate, have a material adverse effect on Grantor, its business or operations, or its ability to perform its obligations under the Loan Documents;

g)    All financial statements, if any, delivered to Secured Party in connection with the Obligations have been prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statement there has been no material adverse change in Grantor's financial condition or business prospects;

h)    Grantor is (or, if the Aircraft is to be acquired hereafter, will be) and will remain the sole lawful owner of the Aircraft and, except as otherwise consented to in writing by Secured Party, Grantor will remain in sole, open and notorious possession of the Aircraft. Grantor has (or, if the Aircraft is to be acquired hereafter, will upon acquisition thereof have) good and marketable title to the Aircraft and power to dispose of the Aircraft, free and clear of all liens and encumbrances other than the lien evidenced by this Agreement and Permitted Liens. Grantor will, at all times during which any amount remains unpaid hereunder or under the Note, keep the Aircraft and the other Collateral free from all Liens, other than those in favor of Secured Party and Permitted Liens, and Grantor will defend the Aircraft and the other Collateral against all claims and demands of all other persons claiming any interest therein;

i)    Grantor has filed or caused to be filed all required federal, state and local tax returns, and has paid or caused to be paid and will continue to pay all taxes that are due and payable with respect to its business and assets (except if being contested in good faith and if adequate reserves for the payment thereof have been established). All sales, use, documentation or similar taxes, fees or other charges due and payable on or prior to the date hereof with respect to the sale to and purchase by Grantor of the Aircraft have been paid in full. Grantor will promptly pay or cause to be paid all taxes, license fees, assessments and public and private charges that are or may be levied or assessed on or against the Aircraft or the ownership or use thereof, or on this Agreement;

j)    Grantor is the registered owner of the Aircraft, as shown in the records of the FAA and, so long as any of the Obligations remain unpaid, Grantor will not impair such registration or cause it to be impaired, suspended or cancelled, nor will Grantor register the Aircraft under the laws of any country except the United States of America;

k) Grantor will promptly notify Secured Party of any facts or occurrences which do or, by passage of time or otherwise, will constitute a breach of any of the above warranties and covenants;

l) Each of the Engines has 550HP or greater rated takeoff horsepower or the equivalent of such horsepower and, if a jet propulsion engine, has at least 1750 lbs of thrust or its equivalent, and each Propeller (if any) has the ability to absorb rated takeoff horsepower or the equivalent of such horsepower, and each Propeller (if any) has the ability to absorb 550HP or greater rated thrust horsepower or the equivalent of such horsepower;

m) Except for (i) registration of the Aircraft with the FAA, (ii) filing and recording of this Agreement with the FAA, (iii) the filing of AC Form 8050-135 with respect to the International Interests assigned or created (or to be assigned or created in the case of Prospective Assignments or Prospective International Interests) in the Aircraft by this Agreement and effecting the registration of such interests with the International Registry and (iv) filing of a financing statement under the UCC, no further action, including any filing, registration or recording of any document, is necessary or advisable in order to establish and perfect Secured Party's interest in the Aircraft as against Grantor and/or any other Person;

n) Grantor has no pending claims and Grantor has no knowledge of any facts upon which a future claim may be based, in each case for breach of warranty or otherwise, against any prior owner, any manufacturer, or any supplier of the Airframe, any Propeller, any Engine, or any Parts;

o) The Records have been kept, and Grantor will so long as any Obligations remain outstanding continue to keep the Records, in accordance with the requirements of the FAA rules and regulations and industry standards.

## ARTICLE 7 -- SECURITY INTEREST ABSOLUTE

Section 7.1    Security Interest Absolute. All rights of the Secured Party and the security interests and International Interests assigned, granted to and created in favor of the Secured Party hereunder, and all obligations of the Grantor hereunder, will be absolute and unconditional, irrespective of:

a) any lack of validity or enforceability of any Loan Document;

b) the failure of the Secured Party to:

(i) assert any claim or demand or to enforce any right or remedy against the Grantor or any other Person under the provisions of the Loan Agreement any other Loan Document or otherwise; or

(ii) to exercise any right or remedy against any Guarantor of, or collateral securing, any of the Obligations;

c) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations or any other extension, compromise or renewal of any of the Obligations;

d) any reduction, limitation, impairment or termination of any of the Obligations for any reason, including any claim of waiver, release, surrender, alteration or compromise, and will not be subject to (and the Grantor hereby waives any right to or claim of) any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality, nongenuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, any of the Obligations;

e) any amendment to, rescission, waiver, or other modification of, or any consent to departure from, any of the terms of the Loan Agreement or any other Loan Document;

f) any addition, exchange, release, surrender or nonperfection of any collateral (including the Collateral), or any amendment to or waiver or release of or addition to or consent to departure from any guaranty, for any of the Obligations; or

g) any other circumstances which might otherwise constitute a defense available to, or a legal or equitable discharge of, the Grantor, any surety or any guarantor.

## ARTICLE 8 -- MISCELLANEOUS

Section 8.1    Governing Law; Jurisdiction. THIS AGREEMENT IS BEING DELIVERED IN THE STATE OF NEW YORK. THIS AGREEMENT, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, IN ALL RESPECTS BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES. Grantor hereby irrevocably consents and agrees that any legal action, suit or proceeding arising out of or in any way in connection with this Agreement or any of the other Loan Documents may be instituted or brought in the courts of the State of New York or in the United States Courts located in the State of New York, and the appellate courts from any thereof, as Secured Party may elect or in any other state or Federal court as Secured Party shall deem appropriate, and by execution and delivery of this Agreement, Grantor hereby irrevocably accepts and submits to, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of any such court, and to all proceedings in such courts. Grantor irrevocably consents to service of any summons and/or legal process by first class, certified United States air mail, postage prepaid, to Grantor at the address set forth herein, such method of service to constitute, in every respect, sufficient and effective service of process in any such legal action or proceeding. Nothing in this Agreement or in any of the other Loan Documents shall affect the right to service of process in any other manner permitted by law or limit the right of Secured Party to bring actions, suits or proceedings in the courts of any other jurisdiction. Grantor further agrees that final judgment against it in any such legal action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction, within or outside the United States of America, by suit on the judgment, a certified or exemplified copy of which shall be conclusive evidence of the fact and the amount of the liability. Secured Party and Grantor agree that such state and Federal courts of and within the State of New York have non-exclusive jurisdiction in respect of any claims brought under the Cape Town Treaty relating to the Aircraft.

Section 8.2    Notices. All notices and other communications hereunder will be in writing and will be transmitted by hand, overnight courier or certified mail (return receipt requested), US postage prepaid. Such notices and other communications will be addressed if to Secured Party, Key Equipment Finance Inc., 66 South Pearl St. – 7th Floor, Albany, NY 12207, and if to Grantor at the address set forth in the introductory paragraph of this Agreement or at such other address as any party may, from time to time, designate by notice duly given in accordance with this section. Such notices and other communications will be effective upon the earlier of receipt or three days after mailing if mailed in accordance with the terms of this section.

Section 8.3    Time of the Essence. Time is of the essence in the payment and performance of all of Grantor's obligations hereunder and under the other Loan Documents.

Section 8.4    Limitation as to Enforcement of Rights, Remedies and Claims. Nothing in this Agreement, whether express or implied, will be construed to give to any Person other than the Grantor and the Secured Party any legal or equitable right, remedy or claim under or in respect of this Agreement or any other Loan Document.

Section 8.5    Severability of Invalid Provisions. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction will, as to such provision, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction will not invalidate or render unenforceable such provision in any other jurisdiction.

Section 8.6    Assignment. GRANTOR WILL NOT SELL, TRANSFER, ASSIGN, CHARTER, LEASE, CONVEY, PLEDGE, MORTGAGE OR OTHERWISE ENCUMBER THE AIRCRAFT OR THIS AGREEMENT, AND ANY SUCH ATTEMPTED SALE, TRANSFER, ASSIGNMENT, CHARTER, LEASE, CONVEYANCE, PLEDGE, MORTGAGE OR ENCUMBRANCE, WHETHER BY OPERATION OF LAW OR OTHERWISE, WITHOUT THE PRIOR WRITTEN CONSENT OF SECURED PARTY WILL BE NULL AND VOID. IN ADDITION, GRANTOR WILL NOT ENTER INTO ANY INTERCHANGE AGREEMENT WITH RESPECT TO THE AIRCRAFT OR RELINQUISH POSSESSION OF THE AIRCRAFT OR ANY ENGINE. OR INSTALL ANY ENGINE OR PART, OR PERMIT ANY ENGINE OR PART TO BE INSTALLED, ON ANY AIRFRAME OTHER THAN THE AIRFRAME DESCRIBED HEREIN. No consent by Secured Party to any of the foregoing will in any event relieve Grantor of primary, absolute and unconditional liability for its duties and obligations under this Agreement. Secured Party, at any time with or without notice to Grantor, may sell, transfer, assign and/or grant a security interest in all or any part of Secured Party's interest in the Loan Documents or the Aircraft or any part thereof (each, a "Secured Party Transfer") and Grantor hereby expressly consents in advance to any such assignment by Secured Party of the Loan Documents and Secured Party's associated rights therein, including in connection therewith any assignment of Secured Party International Interests assigned or created hereunder in or relating to the Aircraft. Any purchaser, transferee, assignee or secured party of Secured Party (each a "Secured Party Assignee") will have and may exercise all of Secured Party's rights hereunder with respect to the items to which any such Secured Party Transfer relates, and Grantor will not assert against any Secured Party Assignee any claim Grantor may have against Secured Party, provided Grantor may assert any such claim in a separate action against Secured Party. Upon receipt of written notice of a Secured Party Transfer, Grantor will promptly acknowledge in writing its obligations under this Agreement, will comply with the written directions or demands of any Secured Party Assignee and will make all payments due under the assigned Agreement as directed in writing by the Secured Party Assignee. Following such Secured Party Transfer, the term "Secured Party" will be deemed to include or refer to each Secured Party Assignee. Grantor will provide reasonable assistance to Secured Party to complete any transaction contemplated by this subsection. Subject to the restriction on assignment contained in this subsection, this Agreement inures to the benefit of, and is binding upon, the successors and assigns of the parties hereto.

Section 8.7    Benefit of Parties, Successors and Assigns; Entire Agreement. All representations, warranties, covenants and agreements contained herein or delivered in connection herewith will be binding upon, and inure to the benefit of, the Grantor and the Secured Party and their respective legal representatives, successors and assigns. This Agreement, together with the other Loan Documents, constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior understandings and agreements of such parties.

Section 8.8    Further Assurances. At any time and from time to time, upon the request of the Secured Party, the Grantor will promptly and duly execute and deliver any and all such further instruments and documents and take such action (including providing any necessary consents) with the International Registry as may be specified in such request, and as are necessary or desirable to perfect, preserve or protect the security interests. International Interests and assignments created or intended to be created hereby, or to obtain for the Secured Party the full benefit of the specific rights and powers herein granted and assigned, including the execution and delivery of Uniform Commercial Code financing statements and continuation statements with respect thereto, or similar instruments relating to the perfection of the mortgage, security interests, International Interests or assignments created or intended to be created hereby.

Section 8.9    Performance by Secured Party. In its discretion, the Secured Party may (but will not be obligated to), at any time and from time to time (regardless of whether or not a Default or an Event of Default has occurred), for the account of the Grantor, pay any amount required to be paid by the Grantor hereunder, or do any act required of the Grantor hereunder, and which the Grantor fails to pay or do at the time required, and any such payment will be repayable to the Secured Party by the Grantor on demand, will bear interest at the Default Rate, and will be secured by the Collateral.

Section 8.10    Indemnity. Grantor will indemnify and hold harmless Secured Party and each Secured Party Assignee, on an   after tax basis, from and against any and all liabilities, causes of action, claims, suits, penalties, damages, losses, costs or expenses (including attorneys' fees), obligations, demands and judgments (collectively, a "Liability") arising out of or in any way related to: (a) Grantor's failure to perform any covenant under any of the Loan Documents, (b) the untruth of any representation or warranty made by Grantor under the Loan Documents, (c) the order, manufacture, purchase, ownership, selection, acceptance, rejection, possession, rental, sublease, operation, use, maintenance, control, loss, damage, destruction, removal, storage, surrender, sale, condition. delivery, return or other disposition of or any other matter relating to the Aircraft, or (d) injury to persons, property or the environment including any Liability based on strict liability in tort, negligence, breach of warranties or Grantor's failure to comply fully with applicable law or regulatory requirements; provided, that the foregoing indemnity will not extend to any Liability to the extent resulting solely from the gross negligence or willful misconduct of Secured Party.

Section 8.11    Amendments. Neither this Agreement, nor any of the terms hereof, may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing which is signed by the party against whom the enforcement of the termination, amendment, supplement, waiver or modification is sought.

Section 8.12    Waiver of Jury Trial. SECURED PARTY AND GRANTOR HEREBY EACH WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THE AIRCRAFT OR THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY SECURED PARTY AND GRANTOR, WHO EACH ACKNOWLEDGE THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER APPLIES TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO. GRANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE SECURED PARTY OR ANY OTHER PERSON INDEMNIFIED UNDER THIS AGREEMENT ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

Section 8.13    Counterpart Execution; Joint and Several Liability. This Agreement and any amendments to this Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when so executed and delivered, will be an original, but all such counterparts will together constitute but one and the same instrument. Fully executed sets of counterparts will be delivered to, and retained by, the Grantor and the Secured Party. If this Agreement is executed by more than one Person as Grantor, the obligations of all such signers hereunder will be joint and several and all references to "Grantor" will apply both jointly and severally.

ARTICLE 9 --    DEFINITIONS

Section 9.1    Definitions. In this Agreement, unless the context otherwise requires, the terms defined herein and in any agreement executed in connection herewith include, where appropriate, the plural as well as the singular and the singular as well as the plural. Except as otherwise indicated, all agreements defined herein refer to the same as from time to time amended or supplemented, or the terms thereof waived or modified in accordance herewith and therewith. The terms "including," "includes" and "include" will be deemed to be followed by the words "without limitation." Unless otherwise defined herein, capitalized terms used herein have the meanings given thereto in the Note. The following terms have the respective meanings set forth below:

a)   "Act" means the Federal Aviation Act of 1958, as amended from time to time and recodified at 49 U.S.C § 44101 et seq.

b) "**Adjustment Amount**" means as of any date of determination the difference between the Fair Market Value of the Aircraft and the Sales Proceeds. If the Sales Proceeds are in excess of the Fair Market Value, the Adjustment Amount shall be zero.

c) "**Affiliate**" means JR LEAR 60-124, LLC and JR LEAR 60-127.

d) "**Affiliate Loan Documents**" means collectively, the aircraft security agreements, promissory notes, any and all guaranties (if any) and all other documents (and all amendments, restatements, modifications and supplements thereto) which are now or hereafter executed in connection therewith by and between Secured Party and the Affiliates and, on occasion, third parties in connection with aircraft finance transactions between such parties.

e) "**Agreement**", "**this Agreement**", "**hereby**", "**herein**", "**hereof**", "**hereunder**" or other like words means this Aircraft Security Agreement, as it may be amended, modified or supplemented from time to time.

f) "**Aircraft**" means the Airframe together with the Engine(s), whether or not such Engine(s) are installed on the Airframe or any other airframe.

g) "**Airframe**" means (i) the one (1) 1997 Learjet, Inc. Model 60 (excluding, however, the Engine or engines from time to time installed thereon) having the United States Registration Number and manufacturer's serial number specified on Schedule 1 attached hereto, (ii) any and all avionics, appliances, instruments, accessories and parts, and all replacements therefor, which are from time to time incorporated or installed in or attached thereto or which have been removed therefrom, and (iii) any replacement airframe which may from time to time be substituted for such Airframe in accordance with the terms of the Agreement.

h) "**Business Day**" means a day other than a Saturday or Sunday on which the banks are open for business in Albany, New York.

i) "**Cape Town Treaty**" has the meaning provided in 49 U.S.C. §44113(1).

j) "**Closing Date**" means the date on which the Secured Party makes the Loan to Grantor pursuant to the Note.

k) "**Collateral**" has the meaning set forth in Section 1.1 hereof.

l) "**Default**" means an event which, after the giving of notice or lapse of time, or both, would become an Event of Default.

m) "**Default Rate**" means the rate per annum set forth in Section 7 of the Note.

n) "**DERA**" means an Irrevocable De-Registration and Export Request Authorization in substantially the form annexed to the Cape Town Treaty.

o) "**Engine**" means (i) each of the two (2) engines manufactured by Pratt & Whitney Of Canada, Model 305a having the manufacturer's serial number specified on Schedule 1 attached hereto (which engine(s) have 550HP or greater rated takeoff horsepower or the equivalent of such horsepower and, if such engine is a jet propulsion aircraft engine, has at least 1750 lb of thrust or its equivalent), whether or not from time to time installed on the Airframe or any other airframe, (ii) any replacement engine which may from time to time be substituted for the Engine pursuant to the terms of the Agreement, and (iii) in each case, any and all parts which are from time to time incorporated or installed in or attached to the Engine and any and all parts removed therefrom.

p) "**Equipment**" means any or all of the Airframe, Engines and Parts.

q) "**Event of Default**" has the meaning set forth in Section 5.1 hereof.

r) "**Event of Loss**" means:

    (i) the Aircraft is lost, stolen, destroyed, rendered permanently unfit for its intended use, or irreparably damaged, from any cause whatsoever;

    (ii) the Aircraft is returned to the manufacturer or seller or either of their agents or nominees pursuant to any warranty settlement or patent indemnity settlement;

    (iii) the Aircraft is damaged to the extent that an insurance settlement is made on the basis of a total loss or a constructive or compromised total loss;

    (iv) the Aircraft is prohibited from use for air transportation by any agency of the Government for a period of six months or more; or

    (v) the Aircraft is taken or requisitioned by condemnation or otherwise by any governmental Person, including a foreign government or the Government resulting in loss of possession by the Grantor for a period of six months or more.

An Event of Loss with respect to the Aircraft will be deemed to have occurred if an Event of Loss occurs with respect to the Airframe that constitutes a part of the Aircraft.

s) "**FAA**" means the United States Federal Aviation Administration or any governmental Person, agency or other authority succeeding to the functions of the Federal Aviation Administration.

t) "**Fair Market Value**" means as of any date of determination the then fair market value of the Aircraft determined by an independent appraiser selected by Secured Party on the basis of the amount that would be obtained in an arm's length transaction between an informed and willing buyer-user (who is neither a lessee in possession nor a used equipment dealer) and an informed and willing seller, under no compulsion to sell assuming (whether or not the same be true) that (i) the Aircraft has been maintained in accordance with the provisions of this Security Agreement, (ii) the Aircraft is in the condition specified Exhibit C hereto, and (iii) that the total number of Airframe hours (including any component with hourly overhaul schedules) accumulated from the Closing Date to the date of determination do not exceed the product of 400 (the estimated annual hours) times the number of twelve month periods and any portion thereof, from the Closing Date to the date of such determination.

u) "**Government**" means the federal government of the United States of America or any instrumentality or agency thereof.

v) "**Guarantor**" means individually and collectively, any guarantor of Grantor's obligations owed to Secured Party.

w) "**Guaranty**" means individually and collectively, any agreement under which any Guarantor guarantees Grantor's obligations owed to Secured Party.

x) "**Incorporated in**" means incorporated, installed in or attached to or otherwise made a part of.

y)  "**Indemnified Parties**" means the Secured Party and its successors, assigns, transferees, directors, officers, employees, shareholders, servants and agents.

z)  "**International Interest**" shall have the meaning provided thereto in the Cape Town Treaty.

aa)  "**International Registry**" has the meaning provided in 49 U.S.C. §44113(3).

bb)  "**Lien**" means any assignment, mortgage, pledge, lien, charge, encumbrance, lease security, interest International Interest, Prospective Assignment, Prospective International Interest, or any claim or exercise of rights affecting the title to or any interest in property.

cc)  "**Loan Documents**" means, collectively, this Agreement, the Note, the Guaranty, if any, an IDERA in favor of Secured Party, and all other documents prepared by Secured Party and now or hereafter executed in connection therewith and all amendments, restatements, modifications and supplements thereto.

dd)  "**Loss Value**" means 100% of the amount necessary to pay in full, as of the date of payment thereof, the principal and accrued interest on the Loan plus any prepayment premium. If an Event of Loss occurs during a period of time when no prepayment is permitted, the Loss Value will include a prepayment premium in an amount equal to 3% of the then outstanding principal balance remaining under the Note.

ee)  "**Note**" means, collectively, all now existing or hereafter executed promissory notes by Grantor as maker in favor of Secured Party, which, according to their respective terms, are executed pursuant to, and secured by the Collateral pledged under, this Agreement, and all amendments, restatements, modifications and supplements thereto.

ff)  "**Note Payment Date**" has the meaning set forth in the Note.

gg)  "**Obligations**" has the meaning given in Section 1.1.

hh)  "**Parts**" means all appliances, parts, components, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature (other than a complete engine or engines) whether now owned or hereafter acquired which may from time to time be incorporated in the Airframe or any Engine (and "<u>Part</u>" means any of the foregoing) or, after removal therefrom, so long as such Parts remain subject to the Lien of this Agreement in accordance with Section 2.4 or Section 2.5 hereof.

ii)  "**Prospective Assignment**" shall have the meaning provided thereto in the Cape Town Treaty.

jj)  "**Prospective International Interest**" shall have the meaning provided thereto in the Cape Town Treaty.

kk)  "**Permitted Lien**" means: (i) Liens in favor of or expressly consented to in writing by the Secured Party; and (ii) mechanics or other like Liens arising in the ordinary course of business for amounts which are not material and the payment of which is either not yet due or is being contested in good faith by appropriate proceedings so long as such proceedings do not, in the Secured Party's opinion, involve any material danger of the attachment, sale, forfeiture or loss of any item of Equipment or any interest therein (including the Lien of the Secured Party).

ll)  "**Person**" means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

mm) "**Primary Hangar Location**" has the meaning specified in Section 2.8.

nn)  "**Propeller(s)**" means (i) the propellers (if any) described and listed by manufacturer's serial numbers listed in Schedule 1 (which propeller(s) have rated takeoff horsepower or the equivalent of such horsepower) and (ii) any replacement propeller which may from time to time be substituted for the Propeller pursuant to the terms of the Agreement.

oo)  "**Purchase Agreement**" (if any) means the Aircraft Sale Agreement dated ___July 26, 2006___ , between ___Jet Ride Inc.___ , and Grantor as buyer, as it may be amended, modified or supplemented from time to time.

pp)  "**Records**" means the records, logs and other material described in Section 2.2.

qq)  "**Sales Proceeds**" means the proceeds from any sale of the Aircraft, less the costs of any sales agents retained by Secured Party, delivery of documents, filing and documentary transfer fees, taxes relating or arising as a result of such transfer, legal costs, costs of notices, any advertisement or similar costs and any other costs or expenses incurred by the Secured Party in connection with the sale or other disposition of the Aircraft.

rr)  "**UCC**" or "**Uniform Commercial Code**" means the Uniform Commercial Code as in effect in any applicable jurisdiction.

*(Signature pages follow)*

IN WITNESS WHEREOF, the parties have each executed this Aircraft Security Agreement, as of the date set forth above.

GRANTOR:

JR LEAR 60-099, LLC

By: Schwyhart Holdings, LLC, its Managing Member

Signature:      X _____
Name:           Bill W. Schwyhart
Title:          Manager
Address:        3333 Pinnacle Hills Pkwy, Penthouse 2, Rogers, AR 72758-8952
Attention:      Lynda Mostyn
Telecopier:     (479) 845-1090

STATE OF Arkansas )
                  ) ss.:
COUNTY OF Benton )

On this 22nd day of September _____ 2006, before me the subscriber personally appeared Bill W. Schwyhart, who being by me duly sworn, did depose and say; that he resides at Benton _____ County, State of Arkansas : that he is a Manager of Schwyhart Holdings, LLC and Managing Member of the Company of JR Lear 60-099, LLC, the Limited Liability Company described in and which executed the foregoing instrument; and that he signed his name thereto by order of the members of said company.

_____
NOTARY PUBLIC

My Commission Expires: 7/5/16

CHERYL NIDA
BENTON COUNTY, ARKANSAS
MY COMM. EXPIRES JULY 5, 2016
NOTARY PUBLIC
COMM. # 12349259

SECURED PARTY:

KEY EQUIPMENT FINANCE INC.

Signature:          x _____
Print Name:         Donald C. Davis
Title:              Vice President
Address:            1000 S. McCaslin Blvd., Superior, CO 80027
Attention:          BAF - Account Manager
Telecopier:         (720) 304-1470

STATE OF **COLORADO**          )
                               ) ss.:
COUNTY OF **BOULDER**          )

On this 25 day of September, 200 6, before me the subscriber personally appeared Donald C. Davis, who being by me duly sworn, did depose and say; that he resides at Boulder County, State of Colorado: that he is a Vice President of Key Equipment Finance Inc., the corporation described in and which executed the foregoing instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
NOTARY PUBLIC

My Commission Expires:



My Commission Expires June 29, 2009

# EXHIBIT "B"

| Airframe Make and Model: | LEARJET, INC. MODEL 60 |
|---|---|
| United States Registration Number: | N60AN |
| Airframe Manufacturer's Serial Number: | 099 |
| Engine Make and Model: | PRATT & WHITNEY OF CANADA MODEL 305A |
| Engine Manufacturer's Serial Numbers: | PCE-CA0028 & PCE-CA0032 |

| Avionics: | | |
|---|---|---|
| | VHF COMM | DUAL VHF-422 |
| | VHF NAV | DUAL VIR-432 |
| | F/D SYS | AMS-850 |
| | A/P | AMS-850 |
| | TRANSPONDERS | DUAL TDR-94D |
| | ADF | DUAL ADF462 |
| | FMS | DUAL FMS-850 |
| | GPS | GPS 4000 |
| | HF | KHF-950 |
| | DME | DUAL DME-442 |
| | EFIS | PROLINE 4 |
| | RADAR | RTA-844 |
| | RAD ALT | SINGLE ALT-55B |
| | TCAS | TIR-920 |
| | TAWS | KGP-860 CLASS B |
| | CVR | CVR-30A |
| | FDR | N/A |



EXHIBIT
B

# EXHIBIT "C"

## FINANCIAL COVENANTS

None.



# EXHIBIT "D"

# FORM OF IRREVOCABLE DE-REGISTRATION
## AND EXPORT REQUEST AUTHORIZATION

### IRREVOCABLE DE-REGISTRATION
### AND EXPORT REQUEST AUTHORIZATION

**THIS IRREVOCABLE DE-REGISTRATION AND EXPORT REQUEST AUTHORIZATION IS LINKED TO AND PART OF THAT CERTAIN AIRCRAFT SECURITY AGREEMENT DATED** _September 26_ , 200 _6_ , **BY AND BETWEEN JR LEAR 60-099, LLC AND KEY EQUIPMENT FINANCE INC., WHICH IS BEING FILED WITH THE FEDERAL AVIATION ADMINISTRATION CONTEMPORANEOUSLY HEREWITH**

_September 26_, 200 _6_

To:     Federal Aviation Administration

Re:     Irrevocable De-Registration and Export Request Authorization

The undersigned is the registered owner of the **LEARJET, INC.** model **60** bearing manufacturers serial number **099** and registration number **N60AN** (together with all installed, incorporated or attached accessories, parts and equipment, the "aircraft").

This instrument is an irrevocable de-registration and export request authorization issued by the undersigned in favor of Key Equipment Finance Inc. ("the authorized party") under the authority of Article XIII of the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. In accordance with that Article, the undersigned hereby requests:

(i)     recognition that the authorized party or the person it certifies as its designee is the sole person entitled to:

(a)     procure the de-registration of the aircraft from the Aircraft Register maintained by the Federal Aviation Administration for the purposes of Chapter III of the _Convention on International Civil Aviation_, signed at Chicago, on 7 December 1944, and

(b)     procure the export and physical transfer of the aircraft from the United States of America; and

(ii)     confirmation that the authorized party or the person it certifies as its designee may take the action specified in clause (i) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in the United States of America shall co-operate with the authorized party with a view to the speedy completion of such action.

The rights in favor of the authorized party established by this instrument may not be revoked by the undersigned without the written consent of the authorized party.

Please acknowledge your agreement to this request and its terms by appropriate notation in the space provided below and lodging this instrument in the Aircraft Register maintained by the Federal Aviation Administration.

## JR LEAR 60-099, LLC

By: **Schwyhart Holdings, LLC, its Managing Member**

Signature:    X_____ _EXHIBIT B – DO NOT SIGN_ ___
Print Name:   Bill W. Schwyhart
Title:        Manager of Schwyhart Holdings, LLC and Managing Member of the Company

**EXHIBIT**

D

C:# 000511728
L#: 000511685
PN#: 8800543551

# Irrevocable De-Registration
# and Export Request Authorization

THIS IRREVOCABLE DE-REGISTRATION AND EXPORT REQUEST AUTHORIZATION IS LINKED TO AND PART OF THAT CERTAIN AIRCRAFT SECURITY AGREEMENT DATED _September 26_, 200 6, BY AND BETWEEN JR LEAR 60-099, LLC AND KEY EQUIPMENT FINANCE INC., WHICH IS BEING FILED WITH THE FEDERAL AVIATION ADMINISTRATION CONTEMPORANEOUSLY HEREWITH

_September 26_, 200 6

To:     Federal Aviation Administration

Re:     Irrevocable De-Registration and Export Request Authorization

The undersigned is the registered owner of the **Learjet, Inc.** model **60** bearing manufacturers serial number **099** and registration **N60AN** (together with all installed, incorporated or attached accessories, parts and equipment, the "aircraft").

This instrument is an irrevocable de-registration and export request authorization issued by the undersigned in favor of Key Equipment Finance Inc. ("the authorized party") under the authority of Article XIII of the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. In accordance with that Article, the undersigned hereby requests:

(i)     recognition that the authorized party or the person it certifies as its designee is the sole person entitled to:

(a)     procure the de-registration of the aircraft from the Aircraft Register maintained by the Federal Aviation Administration for the purposes of Chapter III of the Convention on International Civil Aviation, signed at Chicago, on 7 December 1944, and

(b)     procure the export and physical transfer of the aircraft from the United States of America; and

(ii)    confirmation that the authorized party or the person it certifies as its designee may take the action specified in clause (i) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in the United States of America shall co-operate with the authorized party with a view to the speedy completion of such action.

The rights in favor of the authorized party established by this instrument may not be revoked by the undersigned without the written consent of the authorized party.

Please acknowledge your agreement to this request and its terms by appropriate notation in the space provided below and lodging this instrument in the Aircraft Register maintained by the Federal Aviation Administration.

JR LEAR 60-099, LLC
By: Schwyhart Holdings, LLC (its Managing Member

Signature:     X_____

Print Name:   Bill W. Schwyhart

Title:          Manager

Form No  AIR06-520DERA.306

# EXHIBIT "E"

Exhibit C
to Aircraft Security Agreement

## CONDITION OF AIRCRAFT

For purposes of determining the Fair Market Value it will be assumed that the Aircraft:

(a)     At the time of determination is located within the continental United States, has no deferred maintenance items outstanding, and is:

   (i)     duly certified by the FAA as airworthy;

   (ii)     free and clear of all Liens other than Permitted Liens;

   (iii)     in the same configuration, fully equipped with the same Engines, in the same operating and physical condition, with all systems operating normally, and in good appearance (in each case, ordinary wear and tear excepted) as when originally delivered to Grantor;

   (iv)     in compliance with all so-called "mandatory," "alert" and (to the extent applicable to Grantor, or its operations) "highly recommended" or other service bulletins, service letters, modification kits, and similar notices and components issued, supplied, or available by or through the manufacturer of the Aircraft, and with all "airworthiness alerts" and airworthiness or other directives, circulars, operator bulletins and instructions (including those that require terminating within twelve months from the date of determination) and all other applicable service, maintenance, repair and overhaul regulations issued by the FAA or similar regulatory agency having authority; and

   (v)     shall have no damage history and otherwise be in the condition required under this Lease.

(b)     Overhaul-General.  At the time of determination:

   (i)     the Airframe (including the landing gear) will not have been operated more than one-half of the allowable time between major airframe overhauls or major block maintenance before the next major airframe overhaul or major block maintenance, whichever then applies, in accordance with Grantor's then approved overhaul and/or maintenance program authorized by and performed to FAA requirements applicable to Grantor or the Airframe, and will have no less than half life (as measured by reference to calendar, phase, periodic maintenance, and/or inspection standards) remaining on any life limited Airframe Part or component (including the landing gear) before overhaul or replacement; and

   (ii)     each Engine will not have been operated more than one-half of the allowable time remaining before overhaul (both hot and cold sections as measured by reference to calendar, phase, periodic maintenance, and/or inspection standards) and all cycle limited Parts or time controlled components of each Engine will not have been operated more than one-half the allowable cycles or time remaining before replacement; said Engine overhaul and Engine Parts and components replacement to be performed in accordance with Grantor's then approved engine overhaul and parts and components replacement program authorized by and performed to FAA requirements applicable to Grantor; and

   (iii)     Grantor will have performed all inspections and scheduled maintenance required to be performed on the Airframe, Propeller(s), Engines and all life limited Parts and components within one hundred eighty (180) days after the date of determination and one hundred fifty (150) hours of additional operation after the hour of last usage.

(c)     Fuel; Records.  At the time of determination:

   (i)     each fuel tank will be fifty percent (50%) of full capacity; and
   (ii)     Grantor will deliver all Records to Secured Party.



EXHIBIT

E

Exhibit C Page 1 of 1

# EXHIBIT "F"



C:# 000511728
L:# 000511685
PN#: 8800543551

# Certificate of Authority
Leases and Loans

We do hereby certify as follows:

1.      We are all of the members of <u>JR Lear 60-099, LLC</u>, a Limited Liability Company (the "Company").

2.      The execution, delivery and performance of all documents relating to the financing of certain items of personal property described in an Aircraft Lease Agreement or an Aircraft Security Agreement and various equipment schedules, promissory notes and other documents related thereto (including master security agreements, progress payment documents, assignment and assumption agreements and bills of sale) from time to time entered into with respect thereto between Key Equipment Finance Inc. ("KEF"), and the Company (collectively, the "Transaction Documents") have been duly authorized by the Company.

3.      The Transaction Documents have been or will be duly and validly executed and delivered on behalf of Company if executed by the persons whose names, titles and signatures appear below (the "Authorized Signers").

4.      The Authorized Signer is authorized to bind the Company to the provisions set forth in the Transaction Documents, and the signatures appearing opposite their name is the genuine signature of such Authorized Signer.

5.      The Company's execution, delivery and performance of the Transaction Documents (i) do not conflict with or result in the breach of (A) any provisions of the organizational documents of the Company, or (B) any agreement or other instrument to which the Company is a party or by which it is bound, or (C) any applicable law, judgment, order, writ, injunction, decree, rule or regulation of any court, administrative agency or other governmental authority, (ii) do not constitute a default under any of the foregoing, and (iii) do not require the consent, approval or other authorization of or by any court, administrative agency or other authority or person.

6.      KEF and its successors and assigns are authorized to rely on this Certificate of Authority until forty five (45) days after receipt by KEF of written notice from an authorized representative of the Company expressly advising KEF that this Certificate of Authority may no longer be relied upon for future transactions. Any such notice shall be mailed or hand delivered to Key Equipment Finance, 1000 South McCaslin Boulevard, Superior, CO 80027.

| NAME OF SIGNATORY | SIGNATURE | TITLE OF SIGNATORY |
|---|---|---|
| Bill W. Schwyhart | | Manager of Schwyhart Holdings, LLC and Managing Member of the Company |

IN WITNESS WHEREOF, I have hereunto set my hand this ___22___ day of September, 2006.

Member
**Schwyhart Holdings, LLC**

By: X _____
Name: Bill W. Schwyhart
Title: Manager

Member
**J.B. Hunt, LLC**

By: X _____
Name: J.B. Hunt
Title: Manager

Member
**Robert B. Thornton, LLC**

By: X _____
Name: Robert B. Thornton
Title: Manager

Member
**Graham Holdings, LLC**

By: X _____
Name: Tim Graham
Title: Manager

**EXHIBIT**

F

# EXHIBIT "G"



C:# 000511728
L#: 000511685
PN#: 8800543551

## Certificate Of Authorized Representative

I, <u>Bill W. Schwyhart</u> do hereby certify as follows:

1.      I am the duly elected, qualified and serving <u>Manager of Schwyhart Holdings, LLC the Managing Member of JR LEAR 60-099, LLC.</u> (the "Company") and I [_] am [✓] am not the sole owner of the Company.

2.      I hereby certify to and for the benefit of Key Equipment Finance Inc. ("KEF") and its assigns as follows:

    a)    the true and correct legal name of the Company is as set forth above;

    b)    the sole owners of the Company and their percentage of ownership are as follows:

| | |
|---|---|
| Schwyhart Holdings, LLC | 32 % |
| J.B. Hunt, LLC | 32 % |
| Robert B. Thornton, LLC | 32 % |
| Graham Holdings, LLC | 4 % |
| | % |

    c)    the sole owners of the owners listed in (b) above that are not individuals or publicly owned corporations are as follows.

| OWNER NAME | PERCENTAGE | OWNER OF (COMPANY NAME) |
|---|---|---|
| | % | |
| | % | |
| | % | |
| | % | |

    d)    the sole owners of the owners listed in (c) above that are not individuals or publicly owned corporations are as follows:

| OWNER NAME | PERCENTAGE | OWNER OF (COMPANY NAME) |
|---|---|---|
| | % | |
| | % | |
| | % | |
| | % | |

3.      KEF and its successors and assigns are authorized to rely on this Certificate of Authorized Representative until 45 days after the receipt by KEF of written notice from an authorized officer of Company expressly advising KEF that this Certificate of Authorized Representative may no longer be relied upon. Any such notice shall be mailed or hand delivered to Key Equipment Finance, Inc., 66 South Pearl Street, Albany, NY 12207.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of this limited liability company this 22 day of September 200 6.

[COMPANY SEAL]

Signature:  X _____

Print Name:  Bill W. Schwyhart

Title:       Manager

**EXHIBIT**

tabbies'

G

# EXHIBIT "H"

EXHIBIT

H

C:# 000511728
L#: 000511685
PN#: 8800543561



**Promissory Note**
Aircraft Loan

$6,061,900.00                                   Funding Date: _September 26_ , 200 6

FOR VALUE RECEIVED, JR LEAR 60-099, LLC, ("Maker"), promises to pay to the order of **Key Equipment Finance Inc.**, ("Holder"), the sum of $6,061,900.00 in lawful money of the United States of America (the "Principal"), with interest thereon as hereafter provided ("Interest"), to be paid in the manner set forth herein. This Note is executed pursuant to and is secured by, the Collateral pledged under that certain aircraft security agreement (the "Aircraft Security Agreement") dated as of _September 26_ 200 6 between Maker as grantor and Holder as secured party. Capitalized terms used herein without definition shall have the meaning given them in the Aircraft Security Agreement.

1.       Interest Rate; Closing Rate Adjustment; Place of Payment. (a) Interest on the balance of the Principal outstanding on this Note shall accrue from the Funding Date of this Note and shall be due and payable at a rate of 6.84% per annum (the "Interest Rate") which rate shall be immediately and correspondingly adjusted (pursuant to 2(b) hereof) with each change in the Actual Index (as hereinafter defined). Interest shall be calculated on the basis of a 360-day year consisting of twelve 30-day months.

(b) The Interest Rate has been calculated on the assumption that the LIBOR Rate as reported in the Wall Street Journal on the Funding Date (the "Assumed LIBOR Rate") will be 5.33%. If the LIBOR rate on the Funding Date is different from the Assumed LIBOR Rate, Holder shall make a one time adjustment to the Interest Rate on the Funding Date by increasing or decreasing, as applicable, the Interest Rate by one (1) basis point for every one (1) basis point change in the LIBOR Rate from the Assumed LIBOR Rate. Maker authorizes Holder to change the amount of the Interest Rate in the Note accordingly. Holder shall notify Maker in writing of such adjustment which shall remain in effect while any indebtedness exists under the Note.

(c) Payment of the Principal and Interest hereunder shall be made to Holder at 66 South Pearl Street, Post Office Box 1865, Albany, NY 12201-1865, or at such other place as Holder may designate from time to time in writing. Holder reserves the right to require payment on this Note to be made by wired federal funds or other immediately available funds.

2.       Repayment Terms. (a) Maker shall repay the Principal and Interest hereunder in the installments set forth below. Each installment shall be due and payable on the first day of each month during which any amount remains outstanding hereunder (each such date being a "Note Payment Date") as follows:

(i) If the Funding Date occurs on the first day of the month, Maker shall pay Holder 60 consecutive Monthly installments payable in arrears, each in an amount equal to $66,861.56 commencing and payable on the next Note Payment Date after the Funding Date and on each succeeding Note Payment Date thereafter;

**OR**

(ii) If the Funding Date occurs on any day other than the first day of the month, then (A) on the first Note Payment Date after the Funding Date, an amount equal to $1,151.76 per day as interim interest for the period from the Funding Date through and including the last day of the month in which the Funding Date occurs, which interim interest was calculated by Holder using the Assumed Index plus 151 basis points and is expressly not subject to adjustment pursuant to Section 2(b) hereof; plus (B) 60 consecutive Monthly installments payable in arrears, each in an amount equal to $66,861.56 commencing and payable on the second Note Payment Date following the Funding Date and on each succeeding Note Payment Date thereafter;

**PLUS**

(iii) On the 60 and final Note Payment Date, the Balloon Payment. In addition, Maker will pay a late payment charge of five percent of any payment due hereunder that is not paid on or before the date due hereunder.

(b) Maker and Holder agree that each monthly installment hereunder will be increased or decreased (but not below zero), as the case may be, by the Rate Differential as follows: if, as of any Note Payment Date, (i) the Rate Differential is greater than zero, the amount due on such Note Payment Date shall be increased by such Rate Differential, and (ii) if the Rate Differential is less than zero, the amount of the Note Payment due on such Note Payment Date shall be decreased by such Rate Differential.

(c) As used herein, the following terms have the respective meanings indicated below:

(i) "Assumed Index" means 5.33%

(ii) "Actual Index" means, as of the date of determination, the London interbank offered rate for deposits in United States dollars having a maturity of one month which appears in the "Money Rates" section of The Wall Street Journal, published on the business day on, or immediately prior to, the 28th day of the month immediately preceding such calendar month. If the Actual Index is no longer available, Lessor will choose a new index which is based upon comparable information and will give Lessee notice of such new "Actual Index."

(iii) "Balloon Payment" means $3,758,378.00.

(iv) "Net Investment Balance" means, as of the date of determination, the outstanding balance (calculated using the Assumed Index plus 151 basis points) reflected on Holder's accounting system (which assumes a 360 day year consisting of twelve 30 day months), for the Note Payment Date immediately preceding such day or, if such day is a Note Payment Date, for such Note Payment Date.

(v) "Rate Differential" means, with respect to any Note Payment Date, the product of the following formula:

$$\text{Rate Differential} = \frac{\text{Actual Index} - \text{Assumed Index}}{12} \times \text{Net Investment Balance}$$

3.   Security. Payment of the Principal and Interest hereunder, and the performance and observance by Maker of all agreements, covenants and provisions contained herein, is secured by a first priority security interest in the Collateral.

4.   Prepayment. Except as contemplated by Section 3.1 of Article 3 of the Aircraft Security Agreement, Maker may not prepay, in whole or in part, the Principal outstanding hereunder; provided, however, that commencing on the date following the 12-month anniversary of the Funding Date, Maker may prepay, on any Note Payment Date and in whole but not in part, the Principal outstanding hereunder including the Balloon Payment by paying to Holder such outstanding Principal, together with all accrued and unpaid interest thereon as of the date of payment, plus all fees or charges incurred by Holder in connection with such prepayment, plus a prepayment premium ("Prepayment Premium") equal to a percentage of the outstanding Principal including the Balloon Payment calculated as follows:

| Months | Prepayment Premium |
|---|---|
| 01 – 12 | No Prepayment Permitted |
| 13 – 24 | 1.00% |
| 25 – 36 | 0.50% |
| 37 – End of Term | 0.00% |

Notwithstanding anything to the contrary contained herein or in the Aircraft Security Agreement, Holder will waive its right to require payment of the Prepayment Premium if (a) Maker wishes to prepay the outstanding principal hereunder in connection with Maker's acquisition of a new aircraft, and (b) Maker wishes to finance the purchase of such new aircraft through Holder, and (c) Holder in its sole discretion determines that it approves of the then credit-worthiness of Maker, the new aircraft, and all aspects of the financing of the new aircraft, and (d) Maker enters into a new promissory note and aircraft security agreement for the benefit of and on terms satisfactory to Holder to finance such new aircraft.

5.   Transfer or Assignment. Holder may at any time assign or otherwise transfer or negotiate this Note in whole or in part, without any notice to Maker. The rights and obligations of Maker may not be assigned or delegated.

6.   Application of Payments. Prior to an Event of Default, each payment received on this Note shall be applied first to all costs of collection, then to unpaid late payment charges (if any) and Prepayment Premium (if any) hereunder, then to Interest as of the payment due date and the balance, if any, to the outstanding Principal as of the date received. Upon the occurrence, and during the continuance, of an Event of Default, any payments in respect of the Liabilities and any proceeds of the Collateral when received by Holder in cash or its equivalent, will be applied first to costs of collection and, thereafter, in reduction of the Liabilities in such order and manner as Holder may direct in its sole discretion, and Maker irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Holder shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Holder's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

7.   Events of Default. (a) Maker shall be in default if any of the following happens (an "Event of Default"): (1) Maker fails to make any installment of the Principal or Interest, or any other payment due and owing, under this Note within ten (10) days after the same becomes due and payable; or (2) Maker fails to perform any other obligation required to be performed by Maker under this Note, the Aircraft Security Agreement or any of the other Loan Documents for thirty (30) days after written notice from Holder of such failure; or (3) any representation, warranty or other statement by or on behalf of Maker in connection with this Note is false or misleading in any material respect; or (4) an Event of Default has occurred and is continuing under the Aircraft Security Agreement.

(b) Notwithstanding anything to the contrary contained herein, upon the occurrence of an Event of Default, Holder may declare the entire outstanding balance of the Principal, together with all accrued and unpaid Interest thereon, immediately due and payable without notice or demand which amounts shall, together with all other sums due hereunder, accrue interest from such acceleration until the date of actual payment at the Default Rate ("Default Rate" shall mean an annual interest rate equal to the lesser of 18% or the maximum interest rate permitted by Applicable Law). Should there occur an Event of Default, and if a voluntary or involuntary petition under the United States Bankruptcy Code is filed by or against Maker while such default remains uncured, the entire outstanding balance of the Principal automatically shall be accelerated and due and payable with interest thereon at the Default Rate and Holder may exercise any and all of its remedies hereunder, under the other Loan Documents and under Applicable Law ("Applicable Law" shall mean all applicable Federal, state, local and foreign laws, ordinances, judgments, decrees, injunctions, writs, rules, regulations, orders, licenses, and permits of any governmental agency). The remedies of Holder provided herein, in the Aircraft Security Agreement and under Applicable Law shall be cumulative and concurrent and may be pursued singly, successively or concurrently at the sole discretion of Holder and may be exercised as often as occasion therefor shall occur. The failure to exercise, or any delay in the exercise of, any right or remedy shall in no event be construed as a waiver, release or exhaustion of any such remedies.

8.   Collection Costs. In addition to the Principal, Interest, Prepayment Premium (if any), and late payment charges (if any), Maker shall pay Holder on demand, and Holder shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Holder's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. All such costs and expenses shall be payable on demand and, until paid, shall be Liabilities secured by the security interest granted under the Aircraft Security Agreement and all other collateral, if any, held by Holder as security for Maker's obligations under this Note.

9.   Governing Law; Binding Agreement. The provisions of this Note shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns. THIS NOTE, THE AIRCRAFT SECURITY AGREEMENT AND OTHER LOAN DOCUMENTS ARE BEING DELIVERED IN THE STATE OF NEW YORK AND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICT OF LAWS PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF NEW YORK.

10.   More than One Signer. If more than one person or entity signs this Note as a Maker, the obligations contained herein shall be deemed joint and several and all references to "Maker" shall apply both jointly and severally.

11.   General. Maker represents and warrants that this Note evidences a loan for business or commercial purposes. Prior to signing this Note, Maker read and understood the provisions hereof, and agrees to all terms and conditions contained herein.

12.   Waiver. MAKER AND ALL ENDORSERS, SURETIES, AND GUARANTORS HEREOF HEREBY JOINTLY AND SEVERALLY WAIVE PRESENTMENT FOR PAYMENT, DEMAND, NOTICE OF NON-PAYMENT OR DISHONOR, NOTICE OF INTENTION TO ACCELERATE

THE MATURITY, NOTICE OF PROTEST AND PROTEST OF THIS NOTE. HOLDER AND MAKER HEREBY EACH WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH HOLDER OR MAKER MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY HOLDER AND THE MAKER WHO EACH ACKNOWLEDGE THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

13.    Usury; Partial Invalidity. (a) At no time shall the Interest Rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for this type of loan. Should Holder ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the Principal.

(b) Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under the laws of any applicable jurisdiction, such provision, as to such jurisdiction, shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note in any other jurisdiction.

14.    Notices. All notices and other communications under this Note shall be in writing and shall be addressed: (a) if to Maker, 3333 Pinnacle Hills Pkwy Penthouse 2, Rogers, AR 72758-8952; and (b) if to Holder Key Equipment Finance Inc., 7th Floor, 66 South Pearl Street, Albany, NY 12207, Attention: Customer Service, or such other address as either party hereto shall communicate to the other party at its address specified above. All such notices and other communications shall be deemed to have been duly given if delivered by hand, overnight courier or if sent by certified mail, return receipt requested, to the party to whom such notice is intended to be given, and shall be effective upon receipt.

15.    Funding Date. The Funding Date for this Note shall be the date on which Holder disburses funds hereunder TO THE EXTENT THE FUNDING DATE IS LEFT BLANK ABOVE, OR DOES NOT REFLECT THE ACTUAL DATE THAT HOLDER DISBURSES FUNDS HEREUNDER, MAKER HEREBY AUTHORIZES HOLDER TO WRITE IN THE CORRECT DATE AT THE TIME OF DISBURSEMENT.

*(Signature Pages Follow)*

**IN WITNESS WHEREOF,** Maker, intending to be legally bound, has caused this Note to be duly executed on the day and year first above written.

MAKER:

**JR LEAR 60-099, LLC**

By:  Schwyhart Holdings, LLC, Its Managing Member

Signature:      X

Print Name:     Bill W. Schwyhart

Title:          Manager

# EXHIBIT "I"

C:# 000511728
L#: 000511685
PN#: 8800543551



**Borrower Acknowledgment**
Certificate of Acceptance

**THIS IS A CERTIFICATE ACKNOWLEDGING**
**ACCEPTANCE OF THE EQUIPMENT FOR**
**PURPOSES OF THE BELOW-REFERENCED**
**LOAN DOCUMENTS.**
**THIS IS NOT A DELIVERY RECEIPT.**

All the items of Equipment covered by an Aircraft Security Agreement dated as of _September 26_, 200_6_ by the undersigned in favor of Key Equipment Finance Inc. ("KEF") in connection with a Promissory Note dated as of _September 26_, 200_6_ between KEF, as Lender, and the undersigned, as Borrower (collectively, the "Loan Documents"): (a) were received by the undersigned, (b) are satisfactory to the undersigned in all respects and are acceptable to the undersigned for financing under the Loan Documents, (c) are suitable for the undersigned's purposes, (d) are in good order, repair and condition, (e) have been installed and operate properly, and (f) are subject to all of the terms and conditions of the Loan Documents.

Dated: _September 22, 2006_

**JR LEAR 60-099, LLC**
**By: Schwyhart Holdings, LLC, its Managing Member**

Signature:    X_____

Print Name:    Bill W. Schwyhart

Title:    Manager

**This Certificate is executed in multiple counterparts to facilitate FAA filing. Each counterpart, when executed and delivered, shall be an original, but all such counterparts shall together constitute but one and the same instrument.**



EXHIBIT
I

# EXHIBIT "J"

EXHIBIT J

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone (800) 331-3282    Fax (818) 662-4141

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

DE, Secretary of State

FILING NUMBER: 64118337
FILING DATE: 28-NOV-2006
IMAGE REFLECTS DATA FROM AN ELECTRONIC FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
63337888                               9/27/2006

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☒ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**
6a. ORGANIZATION'S NAME: JR LEAR 60-099, LLC
6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

**7. CHANGED (NEW) OR ADDED INFORMATION:**
7a. ORGANIZATION'S NAME: Center Capital Corporation
7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
7c. MAILING ADDRESS: 3 Farm Glen Boulevard | CITY: Farmington | STATE: CT | POSTAL CODE: 06032 | COUNTRY: US
7d. TAX ID #: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☒ assigned.

Airframe Make and Model: •LEARJET, INC. MODEL 60
United States Registration Number: •N60AN
Airframe Manufacturer's Serial Number: •099
Engine Make and Model: •PRATT & WHITNEY OF CANADA MODEL 305A
Engine Manufacturer's Serial Numbers: •PCE-CA0028 & PCE-CA0032
Avionics: •VHF COMM•DUAL VHF-422VHF NAV•DUAL VIR-432F/D
SYS•AMS-850A/P•AMS-850TRANSPONDERS•DUAL TDR-94DADF•DUAL ADF462FMS•DUAL FMS-850GPS•GPS
4000HF•KHF-950DME•DUAL DME-442EFIS•PROLINE 4RADAR•RTA-844RAD ALT•SINGLE
ALT-55BTCAS•TIR-920TAWS•KGP-860 CLASS BCVR•CVR-30AFDR•N/A

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME: Key Equipment Finance Inc.
9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA** LS#88-543551    C#511685
22618185    Debtor name: JR LEAR 60-099, LLC

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

DE, Secretary of State

**FILING NUMBER:** 63337888

**FILING DATE:** 27-SEP-2006

**IMAGE REFLECTS DATA FROM AN ELECTRONIC FILING**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | JR LEAR 60-099, LLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 3333 Pinnacle Hills PKWY, Penthouse 2 | CITY Rogers | STATE AR | POSTAL CODE 72758 | COUNTRY US |
|---|---|---|---|---|

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION DE | 1g. ORGANIZATIONAL ID #, if any 4205587 | □ NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)    □ NONE

| 3a. ORGANIZATION'S NAME | Key Equipment Finance Inc. | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 66 South Pearl St. | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY US |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
This financing statement covers all of Debtor's right, title and interest, now owned or hereafter acquired, in and to the following described equipment, together with any and all (1) substitutions, replacements or exchanges therefore, (2) replacement parts, additions, attachments and accessories incorporated therein or affixed thereto, or used in connection therewith, and (3) cash and non cash proceeds including, without limitation, claims of the Debtor against third parties for loss or damage to, or destruction of, such equipment; Any and all present and future leases, subleases, management agreements, interchange agreements, charter agreements, purchase agreements and any other present and future agreements of any kind whatsoever relating to the equipment or any part thereof, together with all of the products and proceeds thereof (including without limitation insurance proceeds and lease payments) and, including any International Interest (and associated rights) therein or related thereto in favor of debtor.

Airframe Make and Model:•LEARJET, INC. MODEL 60
United States Registration Number:•N60AN
Airframe Manufacturer's Serial Number:•099
Engine Make and Model:•PRATT & WHITNEY OF CANADA MODEL 305A
Engine Manufacturer's Serial Numbers:•PCE-CA0028 & PCE-CA0032

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☒ LESSEE/LESSOR | □ CONSIGNEE/CONSIGNOR | □ BAILEE/BAILOR | □ SELLER/BUYER | □ AG. LIEN | □ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | □ All Debtors | □ Debtor 1 | □ Debtor 2 |
|---|---|---|---|---|

| 8. OPTIONAL FILER REFERENCE DATA LS#88-543551 | | C#511685 | | |
|---|---|---|---|---|

22114226

SUBJECT TO:

Grantor:
    **Aircraft Security Agreement**
    JR Lear 60-099, LLC
    3333 Pinnacle Hills Pkwy., Penthouse 2
    Rogers, AR 72758-8952

Secured Party:
    Key Equipment Finance Inc.
    66 South Pearl St. – 7th Floor
    Albany, NY 12207

Dated:    9-26-06
Filed:    9-26-06
Recorded:    11-15-06
Conveyance No.:    TT025443
Amount:    Not shown

**Attachments:**

Schedule 1 – Collateral
    Covers:  Learjet Inc 60, N60AN, Serial No. 099, Two (2) Pratt & Whitney of Canada 305A Engines
        Serial Nos. PCE-CA0028 & PCE-CA0032
Exhibit A – Financial Covenants:  None
Exhibit B – Form Of Irrevocable De-Registration And Export Request Authorization
Exhibit C – Condition Of Aircraft
Borrower Acknowledgement:  Certificate of Acceptance
**(This interest is registered at the International Registry as File No. 36381.)**

The equipment which is the subject of this report falls into the category of an "Aircraft Object" as defined in the Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft.

The research that resulted in the issuance of this report includes a search of the following records:  archived documents referencing subject equipment on file at the Federal Aviation Administration Civil Aviation Registry, Aircraft Registration Branch (the "FAA Registry") and indices of in-process documents by the FAA Registry, including Forms 8050-135 to obtain authorization codes for the International Registry created by the Convention and Protocol referred to above (the "International Registry").  In addition, we have searched for registered interests at the International Registry.

Specifically excluded from this report are any Forms 8050-135 for Prospective International Interests, Prospective Assignments or Prospective Sales filed with the FAA Registry more than 60 days prior to the date of this report.

Declarations by Contracting States.  It is possible that the FAA Registry records and International Registry records might not reflect certain interests or rights declared by any Contracting State to be valid without filing with the FAA Registry or registering with the International Registry.  This report does not purport to cover any interests which are NOT filed/recorded with the FAA Registry and/or the International Registry.

Aero Records & Title Co. cannot and does not guarantee the accuracy of the information obtained from the International Registry, the review of which is integrated with the review of the FAA Registry records for the purpose of issuing this report.  By allowing free-text entries of registrations at the International Registry, the International Registry has rendered it almost impossible to know how to exactly describe an Aircraft Object when searching for registered interests, so as to pick up each and every interest registered using the free-text mode.  In the description of an Aircraft Object, each comma, dash, space and case must be identical to the registered interest in order for that interest to be searchable.  In all cases when a drop down menu is available at the International Registry, Aero Records searches only the drop down menu, and does not make a specific free-text search.

While Aero Records & Title Co. has exercised great care in the examination and reporting of the legal documents, data bases, indices and certificates we have reviewed in order to issue this report, we cannot be and are not responsible for errors or omissions on the part of either the FAA Registry or the International Registry.  The accuracy of the information reported herein relies upon the searchability, availability, and accuracy of the information maintained and provided by the FAA Registry and the International Registry.

AERO RECORDS & TITLE CO.

BY: *Melissa Koboldt*        PROOFED BY: *Mary Boren*

N60AN 11-29-06 PL mb

# Priority Search Certificate

Issued by

## The International Registry for International Interests In Mobile Equipment (Aircraft Equipment)

This certificate was created on 29 Nov 2006 at 14:43:20 GMT

Certificate Number: 113016

Requested by:        Mike Goble of Aero Records & Title Co.

Beneficiary of Priority Search Certificate:    AERO RECORDS & TITLE CO.

## Search Criteria

| | |
|---|---|
| Manufacturer: | LEARJET |
| Model designation: | LEARJET 60 |
| Manufacturer's serial number: | 99 |

## Search Results

| Date/time | Details of Interest |
|---|---|

No Registrations were found matching your search criteria.

End of List

This document has been digitally signed by the Registrar and the signature has been filed.      Page 1 of 1

# Priority Search Certificate

Issued by

## The International Registry for International Interests In Mobile Equipment (Aircraft Equipment)

This certificate was created on 29 Nov 2006 at 15:10:35 GMT

Certificate Number: 113028

Requested by:                                    Mike Goble of Aero Records & Title Co.

Beneficiary of Priority Search Certificate:    AERO RECORDS & TITLE CO.

## Search Criteria

Manufacturer:                          LEARJET

Model designation:                     LEARJET 60

Manufacturer's serial number:          099

## Search Results

| Date/time | Details of Interest | |
|---|---|---|
| 27SEP2006 07:42:47 GMT | **Registration** Type: File number: Seller: Jetride, Inc. Buyer: JR Lear 60-099, LLC | Contract of Sale 36287 Contact details: gary.qualmann@airnet.com Contact details: lynda@pinnaclehills.com |
| 27SEP2006 12:20:37 GMT | **Registration** Type: File number: Debtor: JR Lear 60-099, LLC Creditor: KEY EQUIPMENT FINANCE INC. | International Interest 36381 Contact details: lynda@pinnaclehills.com Contact details: legal.kef@key.com |

End of List

This document has been digitally signed by the Registrar and the signature has been filed.                    Page 1 of 1

# EXHIBIT "K"



**EXHIBIT**

K

# MASTER ASSIGNMENT AGREEMENT
(AIRCRAFT PROMISSORY NOTE)

This **ASSIGNMENT AGREEMENT** ("Agreement") is made as of the 18th day of September, 2006, by and between **Center Capital Corporation**, a Connecticut corporation with its principal place of business at 3 Farm Glen Boulevard, Farmington, Connecticut 06032, ("Assignee") and **Key Equipment Finance Inc.**, a Michigan corporation with an address at 1000 S. McCaslin Boulevard, Superior, Colorado 80027 ("Assignor").

## RECITALS

A.  From time to time Assignor may make loans to one or more borrowers (collectively the "Borrowers" and individually a "Borrower"), which shall be evidenced by promissory notes (collectively the "Promissory Notes" and individually a "Promissory Note") payable to the order of Assignor. As security for the obligations under the Promissory Notes, the Borrowers and Assignor will enter into Aircraft Security Agreements (as amended from time to time prior to the date hereof, the "Security Agreements"), pursuant to which Borrower granted to Assignor a security interest in certain collateral (the "Collateral") described in the Security Agreement. Each Security Agreement may be either (1) a collateral schedule that incorporates therein a master security agreement (a "Master Security Schedule") or (2) an individual loan and security agreement (a "Single LSA"). As used in this Agreement, the term "Schedule" means such Master Security Schedule or such Single LSA, as applicable. If a Guaranty (as defined below) is listed in the Specification (defined below), then Borrower's obligations under the Promissory Note and the Security Agreement are guaranteed by the guarantor described in the Specification (the "Guarantor") under the terms of the Guaranty described in the Specification (the "Guaranty").

B.  Assignor desires to sell and assign to Assignee from time to time, and Assignee desires to purchase from Assignor from time to time, all of Assignor's right, title and interest in and to certain Promissory Notes, Guaranties, Security Agreements and security interests in the Collateral, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) in hand paid, the mutual promises made herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.  **Conveyance; Consideration.**
    (a)  **Conveyance.** In exchange for Assignee's full and final payment of the Consideration (as defined below), and all of Assignee's other agreements hereunder, Assignor hereby sells, assigns, transfers and sets over to Assignee all of Assignor's right, title, interest and obligations, and Assignee hereby fully accepts and assumes the same, in, under and to
        (i)  the Promissory Notes described on a Specification of Assigned Interest (in substantially the form attached hereto as Exhibit 1) executed from time to time by Assignor and Assignee (collectively the "Specifications" and individually a "Specification"), and, solely to the extent related to the indebtedness evidenced by such Promissory Note, all of Assignor's right, title and interest in and to the Schedules described on such Specifications, together with the Guaranty, and all other documents executed and delivered in connection therewith (such Promissory Note, Schedules, Guaranty and other documents are referred to herein collectively as the "Loan Documents"), together with all rights and remedies (relating solely to such Loan Documents) thereunder, and
        (ii)  the security interest granted by Borrower to Assignor in the Collateral described in such Loan Documents, all as more specifically described on the Specification,
        in each case to the extent such rights and obligations arise from and after the date of the transfer contemplated by such Specification. The items specified in subsections (i) and (ii) above are referred to herein collectively as the "Loan" or the "Loans." Assignee hereby accepts such sale, assignment, transfer and set-over from Assignor and, upon execution of the Specification, assumes all of the rights and obligations of the Assignor arising under each Loan from and after the date of the related Specification.
    (b)  **Consideration.** In exchange for each conveyance by Assignor as evidenced by a Specification, Assignee shall pay to Assignor or as Assignor directs, in cash or other immediately available funds, the full amount of the Consideration stated on each such Specification, which amount shall include (i) any fee paid to Assignor (the "Fee") and (ii) either (A) the original invoice cost of the Collateral, (B) the present value of the remaining payments due under the Schedule, or (C) the outstanding principal balance under the Schedule, as applicable (the "Equity"; the "Fee" plus the "Equity" being referred to herein as the "Consideration"). No right, title or interest described in any Specification shall pass to Assignee unless and until Assignor has received payment in full of the Fee and Assignor or its designee, as applicable, has received payment in full of the Equity, in each case as set forth on the Specification therefor.

2.  **Assignor's Warranties and Representations; Disclaimer; Knowledge.**
    (a)  **Warranties and Representations.**
        (i)  With respect to each Specification entered into in connection herewith, Assignor hereby warrants and represents that, effective on the date on which Assignor executes such Specification:
            (A)  each of the Loan Documents to which Assignor is a party which is the subject thereof: has been duly and validly authorized, executed and delivered by Assignor; is in full force and effect with respect to Assignor; and constitutes legal, valid and binding obligations of Assignor, enforceable against Assignor in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally, and by applicable laws and judicial decisions that may affect the remedies provided therein;
            (B)  Assignor has no knowledge that any Default (as such term or similar term is defined in the subject Schedule) or event which, with the giving of notice or lapse of time or both, would become a Default, has occurred under the Loan Documents described on such Specification;
            (C)  the information set forth on such Specification is true and correct, and the Loan Documents described on such Specification (and its attached schedule) are all of the documents executed or delivered to or by Assignor in connection with the Loan, and such documents constitute the entire agreement of the parties thereto with respect to the transaction evidenced thereby;
            (D)  Assignor has not heretofore assigned or pledged or otherwise encumbered the interest assigned under such Specification and Assignor has a perfected security interest in the applicable Collateral;
            (E)  Assignor has no knowledge that any of the Loan Documents to which any Obligor (as defined in Section 4 below) is a party:
                (1)  has not been duly and validly authorized, executed and delivered by each Obligor;
                (2)  is not in full force and effect with respect to any Obligor; or
                (3)  does not constitute legal, valid and binding obligations of any Obligor, enforceable against such parties in accordance with their terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the

enforcement of creditors' rights generally, and by applicable laws and judicial decisions which may affect the remedies provided therein;

(F) except as set forth on the Specification, no security deposit or prepayment of principal or interest has been paid to Assignor by the Borrower or any third party in connection with the Schedule and Assignor has not granted and will not grant to the Borrower any allowance, credit memo or adjustment, and Assignor has not entered and will not enter into any settlement, modification or amendment of the Schedule or any master security agreement incorporated therein;

(G) Assignor has no knowledge of any defenses, setoffs or counterclaims with respect to the Schedule;

(H) Assignor has no knowledge that:
   (1) the Collateral has not been delivered to and accepted by Borrower or is not in good working order and suitable for Borrower's purpose in all respects;
   (2) the Collateral is not in Borrower's possession at the location specified in the Loan Documents;
   (3) the Collateral has suffered any casualty loss; or
   (4) the purchase price of the Collateral and any taxes coming due in connection with its acquisition have not been fully and finally paid;

(I) no Obligor is affiliated with or related to Assignor;

(J) Assignor has no knowledge that any Obligor has made any assignment for the benefit of creditors, ceased to do business as a going concern, filed or had filed against it a petition under the United States Bankruptcy Code or for appointment of a receiver, or (in the case of an individual) died;

(K) there is only one executed original of each Promissory Note and Schedule, each such original was delivered to Assignor by the Borrower, and such original has been delivered by Assignor to Assignee. There are three originals of the Schedule, only one of which constitutes chattel paper under the Uniform Commercial Code and that chattel paper original has been delivered to Assignee. Assignor has delivered to Assignee all originals of the other Loan Documents except those properly in the possession or control of any Obligor or submitted to the Federal Aviation Administration for filing;

(L) each Master Security Schedule is separate and severable from each other schedule executed pursuant to the same master security agreement and Assignee may take enforcement action independently of the owners or pledgees of schedules not assigned to Assignee;

(M) Assignor has not knowingly taken any action or failed to take any action that would prohibit or prevent Assignee from holding a first priority security interest in the Collateral; and

(N) Assignor has no knowledge of any existing fact, event, condition or circumstance that would prevent Assignee from holding a first priority security interest in the Collateral.

(ii) Assignor hereby warrants and represents, as of the date hereof and as of the date of each Specification, that:
   (A) the execution of this Agreement, each Specification and the Loan Documents to which Assignor is a party and Assignor's consummation of the transactions contemplated hereby and thereby are in the ordinary course of Assignor's business and within the scope of its existing corporate authority;
   (B) Assignor has received no written notice of any action, suit or proceeding against Assignor before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Assignor of this Agreement or any of the Loan Documents to which Assignor is a party;
   (C) no approval of, or consent from, any governmental authority is required for the execution, delivery or performance by Assignor of this Agreement, each Specification or any of the Loan Documents to which Assignor is a party or, if such approval or consent is required, it has been obtained;
   (D) the execution, delivery and performance by Assignor of this Agreement, each Specification, and the Loan Documents to which Assignor is a party, and the consummation of the transactions contemplated hereby and thereby, do not:
      (1) contravene any provision of law applicable to Assignor;
      (2) conflict with the provisions of, and will not result (with or without the giving of notice or passage of time or both) in the breach of or constitute a default or require any consent under, any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Assignor is a party, by which Assignor may be bound, or to which Assignor or its property may be subject;
      (3) result in the creation of any lien, charge or encumbrance upon the Collateral or the Loan Documents; or
      (4) constitute a violation of Assignor's charter or by-laws or other organizational documents;
   (E) this Agreement constitutes the legal, valid and binding obligation of Assignor, enforceable against Assignor in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally, and by applicable laws and judicial decisions which may affect the remedies provided herein; and
   (F) it is duly organized and validly existing with the power to execute and deliver this Agreement and to consummate the transactions contemplated hereby.

Assignor further represents and warrants that, for purposes of Article 9 of the Uniform Commercial Code, Assignor's exact legal name and state of organization are as specified in the introductory paragraph of this Agreement. Assignor's representations and warranties under this Section 2 shall survive the assignment of the Loans to Assignee.

(b) Disclaimer; Limitation of Recourse.
   (i) Except as set forth in this Section 2, and except as otherwise provided in a Specification, Assignor has not heretofore made, nor does it make by this Agreement or any Specification entered into in connection herewith, any representations or warranties, and Assignor assumes no liabilities or responsibilities, with respect to the due execution by any Obligor or the legality, validity, sufficiency, enforceability of or collectability under any of the Loan Documents or any document related thereto.
   (ii) This assignment is without recourse to Assignor, except as to the breach of any representation, warranty, or agreement by Assignor hereunder.

(c) Knowledge. As used in this Section 2, "knowledge" shall mean the actual knowledge of any employee of Assignor having continuing responsibility for the administration and collection of the amount due under the Loan Documents and communicated to the employee of Assignor who is responsible for managing the relationship between Assignor and Assignee.

3.   Assignee's Warranties and Representations. Assignee hereby warrants and represents that:
(a) Assignee's execution of this Agreement and Assignee's consummation of the transactions contemplated hereunder are in the ordinary course of Assignee's business and within the scope of its existing corporate authority;
(b) Assignee has received no written notice of any action, suit or proceeding against Assignee before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Assignee of this Agreement or the performance by Assignee under any of the Loan Documents;

(c) no approval of. or consent from, any governmental authority is required for the execution, delivery or performance by Assignee of this Agreement or the performance by Assignee under any of the Loan Documents, or, if such approval or consent is required, it has been obtained;

(d) the execution, delivery and performance by Assignee of this Agreement, each Specification, and the Loan Documents to which Assignee is a party, and the consummation of the transactions contemplated hereby and thereby, do not:
  (i)   contravene any provision of law applicable to Assignee;
  (ii)  conflict with the provisions of, and will not result (with or without the giving of notice or passage of time or both) in the breach of or constitute a default or require any consent under any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Assignee is a party, by which Assignee may be bound, or to which Assignee or its property may be subject;
  (iii) result in the creation of any lien, charge or encumbrance upon the Collateral or the Loan Documents; or
  (iv)  constitute a violation of Assignee's charter or by-laws or other organizational documents;

(e) this Agreement constitutes the legal, valid and binding obligation of Assignee, enforceable against Assignee in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally, and by applicable laws and judicial decisions which may affect the remedies provided herein;

(f) it understands the Interest is being offered and sold without registration under any securities laws;

(g) it is acquiring the Interest solely for its own account and not with a view to resale;

(h) it is an "Accredited Investor" as defined in Rule 501 of Regulation D of the Securities Exchange Act of 1933;

(i) it has independently and without reliance upon Assignor conducted its own credit evaluation, reviewed such information as it has deemed adequate and appropriate and made its own analysis of each Obligor, the Loan Documents, and the Loan;

(j) it has not relied upon any investigation or analysis conducted by, advice or communication from, or any warranty or representation by, Assignor or any agent or employee of Assignor, express or implied, concerning the financial condition of any Obligor or concerning any Collateral or the value thereof, or the tax or economic benefits of an investment in such Loan Documents;

(k) it has had (or acknowledges by its execution of any Specification, that it will prior thereto have had) access to all financial and other information it deems necessary to evaluate the merits and risks of a purchase of each Loan including the opportunity to ask questions, receive answers and obtain additional information from Assignor and each Obligor necessary to verify the accuracy of information provided;

(l) it acknowledges that Assignor takes no responsibility for and makes no representation or warranty regarding any financial information regarding any Obligor furnished to Assignee by Assignor;

(m) it or its authorized representatives acting on its behalf have such knowledge and experience in business and financial matters necessary to evaluate the merits and risks of a purchase of the Loans;

(n) it is experienced in making purchases of loan transactions similar to the Loans and it is financially able to undertake the risks involved in such purchases;

(o) Assignee is not acquiring any Loan with the assets of any "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended, or any "plan" within the meaning of Section 4975(e)(1) of the Internal Revenue Code; and

(p) it is duly organized and validly existing with the power to execute and deliver this Agreement and to consummate the transactions contemplated hereby.

Assignee's representations and warranties under this Section 3 shall survive the assignment of the Loans to Assignee.

4. Delivery of Documents. With respect to each Specification, Assignor shall deliver to Assignee:
  (a) the executed chattel paper original of the Promissory Note and an executed original of the Schedule conveyed thereby;
  (b) certified true and correct photocopies of the other Loan Documents in Assignor's possession which directly relate to the subject Promissory Note and the Collateral;
  (c) if required by such Specification, a Notice and Acknowledgment of Assignment in substantially the form attached hereto as Exhibit 2A (for transactions not involving a guarantor) or Exhibit 2B (for transactions involving a guarantor), as applicable, duly executed by Assignor and the Borrower and, as applicable, the guarantor thereunder (said Borrower and/or guarantor, as applicable, together with their respective successors and assigns being collectively referred to as the "Obligor");
  (d) satisfactory evidence that appropriate FAA and International Registry documents, as well as appropriate UCC-1 financing statements have been filed against Obligor and with respect to the Collateral; and
  (e) such documents and instruments as may be reasonably required to assign to Assignee any and all filings made by Assignor with respect to the Collateral.

Assignee may at all reasonable times, after giving Assignor reasonable prior written notice thereof, inspect and audit such of Assignor's books and records as are directly relevant to the Loans. **ASSIGNOR EXPRESSLY DOES NOT AUTHORIZE ASSIGNEE TO FILE ANY UCC FINANCING STATEMENTS NAMING ASSIGNOR AS DEBTOR.**

5. Covenants.
  (a) Each of the parties covenants and agrees promptly to remit to the other party payments incorrectly received by such party with respect to the Promissory Note or the Collateral after the execution of a Specification with respect thereto.
  (b) Assignor will not, without Assignee's prior written consent:
    (i)   solicit or accept collection of any sums due under any of the Loan Documents;
    (ii)  repossess or consent to the return of the Collateral;
    (iii) modify, amend, or terminate any of the Loan Documents; or
    (iv)  waive any of Assignee's rights or Obligor's obligations thereunder.
  (c) From and after the date Assignee executes each Specification entered into in connection herewith, Assignee shall pay all sales, use, property or other taxes (to the extent attributable to or assessed with respect to the period from and after the date of execution of such Specification) required to be paid unless the Obligor is responsible therefor, in which case Assignee shall cause the Obligor to pay all such taxes.

6. Miscellaneous.
  (a) Successors and Assigns. This Agreement inures to the benefit of, and is binding upon, the successors and assigns of the parties hereto.
  (b) Notices. All notices and other communications hereunder shall be in writing, personally delivered or sent by facsimile (receipt confirmed) or certified mail, return receipt requested, addressed to the other party at its respective address stated below the signature of such party or at such other address as such party shall from time to time designate in writing to the other party, and shall be effective from the date of receipt.
  (c) Brokers. Neither party has, directly or indirectly, employed any broker, finder, financial advisor or intermediary (each a "Broker") in connection with the transactions contemplated by this Agreement who might be entitled to a brokerage, finders', or other fee or commission upon the execution of this Agreement or the consummation of the transactions contemplated hereby. If either party shall have engaged a Broker

contrary to the foregoing representation, the party who entered into such agreement or arrangement shall be solely responsible for any fees or expenses due in connection therewith.

(d) **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed in accordance with, the internal laws of the State of New York (without regard to the conflict of laws principles of such State), including all matters of construction, validity and performance.

(e) **Entire Agreement.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be amended or altered in any manner except by a document in writing executed by both parties. Each party acknowledges and agrees that a short form assignment agreement in substantially the form attached hereto as Exhibit 3 ("Short Form") will be executed by the parties and recorded with the Federal Aviation Administration and that the terms of this Agreement shall control if any term of the Short Form conflicts with the terms of this Agreement.

(f) **Titles.** Section titles are for convenience of reference only and shall not be of any legal effect.

(g) **Further Assurances.** Each party agrees to take or cause to be taken such actions, and to do or cause to be done all such things, as the other party may reasonably request in order to further the transactions contemplated hereunder.

(h) **Not an Extension of Credit.** This Agreement constitutes a sale of 100% ownership interest in the Loans and shall in no way be construed as an extension of credit by Assignee to Assignor. Assignor waives and releases any right, title or interest it may have (whether pursuant to a "cross-collateralization" provision or otherwise) in and to any of the Loans, the Loan Documents and the Collateral.

(i) **Waiver of Jury Trial.** ASSIGNOR AND ASSIGNEE EACH HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BETWEEN ASSIGNOR AND ASSIGNEE BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE LOAN DOCUMENTS, OR ANY DEALINGS BETWEEN ASSIGNOR AND ASSIGNEE RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER MAY ONLY BE MODIFIED IN A WRITING SIGNED BY BOTH PARTIES, AND THE WAIVER SHALL APPLY, AS TO THE MATTERS SET FORTH IN THE FIRST SENTENCE OF THIS SUBSECTION, TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT OR THE LOAN DOCUMENTS. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

**Key Equipment Finance Inc.**

Assignor

By: _Debra M. Zamudio_

Name: ____BRA M. ZAMUDIO____

Title: ____SIGNATED SIGNER____

Address:
1000 S. McCaslin Boulevard
Superior, Colorado 80027
Attention: Syndications Account Manager
Facsimile: (720) 304-1470

**Center Capital Corporation**

Assignee

By: _Linda A. Moschitto_

Name: ____LINDA A. MOSCHITTO____

Title: ____Assistant Vice President____

Address:
3 Farm Glen Boulevard
Farmington, Connecticut 06032
Attention: Vice President – Contracts & Funding Operations
Facsimile: (860) 677-0076

Attachments:

| | |
|---|---|
| Exhibit 1 | Form of Specification of Assigned Interest |
| | Schedule A to Specification of Assigned Interest |
| Exhibit 2A | Form of Notice and Acknowledgment of Assignment (no Guarantor) |
| Exhibit 2B | Form of Notice and Acknowledgment of Assignment (including Guarantor) |
| Exhibit 3 | Form of Assignment Agreement – Aircraft Short Form |

## SPECIFICATION OF ASSIGNED INTEREST

Executed pursuant to the Master Assignment Agreement (Aircraft Promissory Note) dated as of the 18th day of September, 2006 (the "Agreement"), by and between the undersigned Assignor and Assignee.

This Specification is dated and effective as of the date set forth below and incorporates the terms and conditions of the Agreement.

1.  Borrower: JR Lear 60-099, LLC.

2.  Date of Aircraft Security Agreement: September 26, 2006.

3.  Promissory Note: September 26, 2006.

4.  Loan Amount: $6,061,900.00.

5.  Remaining installments due under the Promissory Note: Fifty seven (57) monthly payments, in arrears, each in the amount of $66,861.56, followed by one (1) monthly payment, in arrears, in the amount of $66,861.56 plus a balloon payment of $3,758,378.00. Monthly payments shall be increased or decreased but not below zero (as the case maybe), by the Rate Differential defined in the Loan Documents. First payment due to Assignee on January 1, 2007.

6.  Consideration:  Assignor hereby requests and authorizes Assignee to pay:
    (a) Fee of $34,052.56 to Assignor, plus
    (b) Equity of $5,997,098.37 to Assignor.

7.  Guaranty: dated as of September 23, 2006, by J.B. Hunt, LLC.

8.  Guaranty: dated as of September 23, 2006, by Robert B. Thornton.

9.  Guaranty: dated as of September 22, 2006, by Bill W. Schwyhart.

10.  The attached Schedule A is incorporated herein by this reference.

11.  A Notice and Acknowledgment of Assignment shall be required.

12.  The Servicing Agreement dated as of October 2, 2006 **does not** apply to this Specification.

13.  This Agreement is a material inducement for Assignee's agreement to enter into this Specification and pay Assignor a fee in the amount of thirty four thousand fifty two and 56/100 Dollars ($34,052.56) (the "Fee"), which constitutes a portion of the Consideration identified in this Specification.

     Assignee has advised Assignor that the prepayment premium payable if a voluntary prepayment occurs under Section 4 of the Promissory Note (the "Applicable Section") may be insufficient to repay to Assignee the then unamortized portion of the Fee.

     Except as otherwise provided below, Assignor and Assignee hereby agree that if any Obligor voluntarily prepays the Transaction in accordance with the Applicable Section, then within ten (10) days after Assignor has received written confirmation from Assignee that Assignee has received payment of all amounts due in accordance with the Applicable Section, Assignor will pay to Assignee a supplemental payment ("Supplemental Payment") in the amount set forth on Schedule B attached hereto for the month during which the prepayment occurred.

     The Supplemental Payment will be made in immediately available funds by wire transfer as instructed by Assignee.  Unless an Event of Default or a Default shall have occurred and be continuing under the Transaction or under any of the Transaction Documents, Assignee agrees that it shall not permit the Transaction to be prepaid except in accordance with the Applicable Section.

     Assignor will not be obligated to pay the Supplemental Payment (a) in connection with any prepayment resulting from the exercise of remedies following an Event of Default or a Default, as defined in the documents evidencing the Transaction, or (b) in connection with (i) any voluntary partial prepayment or (ii) any voluntary prepayment other than as set forth in the Applicable Section, or (c) if Assignee allows prepayment under the Applicable Section in return for payment of an amount less than the amount expressly specified in such section, or (d) if Assignee agrees to refinance all or part of the Collateral WITH ASSIGNEE IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF A CREDIT APPROVAL (IF ANY) AS MAY BE DETERMINED BY ASSIGNEE IN ITS SOLE DISCRETION.

Date of Execution: November 29, 2006

| KEY EQUIPMENT FINANCE INC. | CENTER CAPITAL CORPORATION |
|---|---|
| Assignor | Assignee |
| By: | By: _Linda A. Moschitto_ |
| Name: JOHN J. AMATO | Name: LINDA A. MOSCHITTO |
| Title: REGIONAL BUSINESS UNIT MANAGER | Title: Assistant Vice President |

**SCHEDULE A**
**SPECIFICATION OF ASSIGNED INTEREST**

Attached to and made a part of Specification of Assigned Interest dated November 29, 2006.

The Loan Documents are as follows:

1.  Aircraft Security Agreement between JR Lear 60-099, LLC and Key Equipment Finance Inc.
2.  Promissory Note dated September 26, 2006
3.  Certificate of Authority for JR Lear 60-099, LLC
4.  Certificate of Authorized Representative for JR Lear 60-099, LLC
5.  Borrower Acknowledgment dated September 22, 2006
6.  Corporate Guaranty of J.B. Hunt, LLC
7.  Certificate of Authority for J.B. Hunt, LLC
8.  Personal Guaranty of Robert B. Thornton
9.  Personal Guaranty of Bill W. Schwyhart
10. Certificate as to Organizational Documents
11. eDocument Certification
12. Payment of Proceeds Instructions
13. Airworthiness Certificate
14. Certificate of Aircraft Registration
15. Aircraft Registration Application
16. Warranty Bill of Sale
17. UCC-1
18. UCC with Assignment

# EXHIBIT "L"

**Scott Kraus**
Account Manager



**Key Equipment Finance Inc.**
**1000 S. McCaslin Boulevard**
**Superior, CO 80027**
Tel: (720) 304-1178
Fax: (720) 304-1470

November 29, 2006

JR Lear 60-099, LLC
3333 Pinnacle Hills Pkwy
Penthouse 2
Rogers, AR 72758

J.B. Hunt. LLC
611 W. Bowen Blvd
Fayetteville, AR 72703

Robert B. Thornton
12135 Highway 72 west
Bentonville, AR 72712

Bill W. Schwyhart
9 Clubhouse Dr
Rogers, AR 72758

Re:    Notice and Acknowledgment of Assignment of Aircraft Security Agreement dated as of September 26, 2006 (the "Security Agreement"), by and between the undersigned Original Lender and Borrower; and Corporate Guaranty dated as of September 23, 2006, by **J.B. Hunt, LLC,** Personal Guaranty dated as of September 23, 2006, by **Robert B. Thornton;** and Personal Guaranty dated as of September 22, 2006, by **Bill W. Schwyhart** (J.B. Hunt, LLC, Robert B. Thornton, and Bill W. Schwyhart, collectively, the "Guarantor") in favor of Original Lender (the Corporate Guaranty and the Personal Guaranties, collectively, the "Guaranty") (this "Notice")

You are hereby notified that Original Lender has sold, assigned and transferred, or will be selling, assigning and transferring, to **Center Capital Corporation,** having an office at **3 Farm Glen Boulevard, Farmington, CT 06032** ("Assignee"), all right, title and interest of Original Lender in and to the Security Agreement and the related Promissory Note dated September 26, 2006 in the original principal amount of $6,061,900.00 executed pursuant to the Security Agreement (collectively, the "Assigned Note"), and has assigned to Assignee the security interest granted by Borrower with respect to the collateral described in the Security Agreement (the "Collateral"), and the Guaranty, and the related certificates and agreements executed in connection therewith (collectively, the "Loan Documents"). From and after the date of this Notice, you are to make all payments now or hereafter becoming due under the Loan Documents directly to Assignee as Assignee shall direct.

By execution below, Borrower and Guarantor acknowledge receipt of this Notice and confirm and agree to the following:

1.    The Loan Documents are in full force and effect on the date of execution of this Notice by Borrower and Guarantor; are free from all defenses, set-offs and counterclaims; and no Default or event which, with the passage of time or the giving of notice, or both, would constitute a Default under the Loan Documents has occurred.

2.    The Collateral has been delivered to and accepted by Borrower and is in good working order and suitable for Borrower's purposes in all respects. The Collateral is in Borrower's possession.

3.    Neither Borrower nor Original Lender has breached the Loan Documents in any respect and payments of any and all monies due under the Loan Documents and the Assigned Note have been and will continue to be paid in strict accordance with the terms thereof. There has been no prepayment of the Assigned Note. As of November 16, 2006, remaining payments due under the Assigned Note are as follows: Fifty eight (58) monthly payments, in arrears, each in the amount of $66,861.56, followed by one (1) monthly payment, in arrears, in the amount of $66,861.56 plus a balloon payment of $3,758,378.00. Monthly payments shall be increased or decreased but not below zero (as the case may be), by the Rate Differential as defined in the Loan Documents.

4.    Borrower and Guarantor will deal exclusively with respect to the Assigned Note with Assignee, and Borrower and Guarantor will deliver all payments and copies of all notices and other communications given or made by Borrower and/or Guarantor with respect to the Loan Documents to Assignee at the address listed above.

5.    Neither Borrower nor Guarantor has received notice of a prior sale, transfer, assignment, hypothecation or pledge of the Assigned Note or the Collateral.

6.    Borrower agrees to deliver to Assignee, together with this executed Notice, an executed Irrevocable De-Registration and Export Request Authorization in the form attached hereto as Exhibit A reflecting Assignee as the "authorized party" as contemplated by Article 25 of the Convention on International Civil Aviation.

7.    The undersigned acknowledge and agree that in no event is any negotiation or course of dealing between themselves and Original Lender and/or Assignee with respect to this letter agreement intended in any way to negatively impact or limit any right or privilege that arises to the benefit of the lender, its successors and assigns under the express terms of the Loan Documents.



EXHIBIT

tabbies®

JBB\2006 PROJECTS\PINNACLE AIR\NOTICE.AC PROM NOTE.GUARANTOR.SELL-CENTER 2

Please execute where indicated below and return to the address specified above.

**Key Equipment Finance Inc.**
Original Lender

By: _Debra M. Zamudio_

Name: _DEBRA M. ZAMUDIO_

Title: _DESIGNATED SIGNER_

Accepted and agreed to on this _26_ day of _December_, 2006.

**JR Lear 60-099, LLC**
**By: Schwyhart Holdings, LLC, its Managing Member**
Borrower

X: _____

Name: Bill W. Schwyhart

Title: Manager

Accepted and agreed to on this _26_ day of _December_, 2006.

**Robert B. Thornton**
Guarantor

By: _Robert B. Thornton_

Accepted and agreed to on this _26_ day of _December_, 2006.

**J.B. Hunt, LLC**
Guarantor

By: _Johnelle Hunt_

Name: _Johnelle Hunt_

Title: _MANAGER_

Accepted and agreed to on this _26_ day of _December_, 2006.

**Bill W. Schwyhart**
Guarantor

By: _____

# EXHIBIT "M"



**EXHIBIT**

M

C-#: 000511728
L#: 000511685
PN#: 8800543551

## Corporate Guaranty
### Aircraft Promissory Note

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, and in order to induce KEY EQUIPMENT FINANCE INC., ("Lender") to make loans and extend credit to JR LEAR 60-099, LLC ("Borrower"), with its principal place of business at 3333 Pinnacle Hills Pkwy, Penthouse Suite Two, Rogers, AR, 72758-8952 for the financing of certain aircraft and related equipment (the "Equipment") pursuant to a promissory note, aircraft security agreement and other Loan Documents, the undersigned, J.B. Hunt, LLC ("Guarantor"), with its principal place of business at 611 W. Bowen Blvd., Fayetteville, AR 72703-9754, hereby absolutely and irrevocably guarantees to Lender the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. Notwithstanding the foregoing, the liability of the Guarantor under this Guaranty shall not exceed an amount (the "Cap") equal to (a) thirty percent (30%) of the then outstanding Obligations; **provided**, **however**, that nothing contained in the foregoing definition of the Cap is intended to, or shall be interpreted in any manner so as to, detract from or otherwise limit the waivers or other provisions set forth herein.

1.    **Definitions**: The following words shall have the following meanings in this Guaranty:

"Guaranty" means this Corporate Guaranty made by Guarantor for the benefit of Lender.

"Obligations" means the obligations of Borrower under the Loan Documents, including, without limitation, the payment when due of all Payments (including, without limitation, principal and interest due on the indebtedness) and all other sums currently or hereafter owing by Borrower to Lender thereunder, including costs, expenses and attorneys fees incurred by Lender in connection therewith.

"Other Guarantor" means any other guarantor of the Obligations.

"Other Guarantees" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the meaning given in the Aircraft Security Agreement between Lender as Secured Party and Borrower as Grantor dated as of _September 26, 200 6_.

2.    **Nature of Guaranty**. Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations, subject to the Cap. Lender shall not be required to pursue any right or remedy it may have against Borrower or any Other Guarantor under the Loan Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Borrower or any Other Guarantor) before enforcing this Guaranty against Guarantor.

3.    **Guarantor's Representations and Warranties**. Guarantor warrants and represents to Lender that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which it is bound; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) the proceeds of the loans to be made by Lender to Borrower will result in a direct or indirect material economic benefit to Guarantor; (d) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (e) Guarantor has means to and shall keep adequately informed regarding Borrower's financial condition and Lender shall have no obligation to disclose to Guarantor any information regarding Borrower.

4.    **Guarantor Waivers**. (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Loan Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Borrower into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the membership interest in Borrower, Borrower's capital stock, business or Borrower's assets to any other person or party; (ii) the death or dissolution of Borrower, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Borrower, Guarantor or any Other Guarantor; (iv) the granting by Lender of any indulgences or extensions to Borrower, Guarantor or any Other Guarantor; (v) the assertion by Lender against Borrower, Guarantor or any Other Guarantor of any of Lender's rights and remedies provided for under the Loan Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Borrower, Guarantor or any Other Guarantor from any Obligations under the Loan Documents, this Guaranty or any Other Guarantees by Lender or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of the Loan Documents, this Guaranty or any Other Guarantees; or (viii) the destruction, sale, modification or alteration of any item of the Equipment.

(b) Guarantor hereby waives notice of and consents to (i) the financing by Borrower of the Equipment, and to any subleasing or other use of the Equipment permitted by Lender (regardless of who any such sublessee or user may be), (ii) all of the provisions of the Loan Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Borrower of the foregoing documents and of any other agreements, documents and instruments executed by Borrower in connection therewith. Guarantor further waives notice of Lender's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Borrower under the Loan Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Loan Documents or of the terms and conditions of the Loan Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Borrower of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

5.    **Lender Waiver**. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of Lender to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Loan Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by Lender to exercise any right or remedy against Borrower or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of Lender against the Borrower, Guarantor and the Other Guarantors are cumulative. Receipt by Lender of any payments or other sums payable under the Loan Documents with knowledge that Borrower has breached any of the terms, provisions or covenants of the Loan Documents shall not be deemed to be a waiver by Lender of such breach, or a release or relinquishment of any claim for future performance under the Loan Documents or this Guaranty.

6.    **Subordination/Subrogation**. (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Borrower or against or with respect to the Borrower's property (including, without limitation, property collateralizing the Loan Documents), arising from the existence or performance of this Guaranty, until all Obligations to the Lender have been fully and indefeasibly paid in full.

(b) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration or contribution which the Guarantor may now or hereafter have against any of the Other Guarantors in connection with payment of the Obligations under this Guaranty or under the Other Guarantees.

(c) The liability of Guarantor under this Guaranty shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied, subject to the Cap, without regard to whether any Other Guarantor has or has not paid any portion of the Obligations, as required under the Other Guarantees. Guarantor covenants and agrees that any indebtedness of Borrower to Guarantor is hereby subordinated to the obligations of Borrower to Lender, and that after any default under the Loan Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Borrower in trust for Lender to satisfy the obligations of Borrower to Lender and shall forthwith deliver such funds to Lender in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7.    **Assignment**. This Guaranty is assignable by Lender without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of Lender. Any assignee of Lender shall have all of the rights of Lender hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of Lender, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8.    **Severability/Governing Law**. If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of Lender in order to effect the provisions hereof. This Guaranty shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflicts of laws principles of such state. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against Lender or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9.    **Jury Trial Waiver**. GUARANTOR HEREBY WAIVES ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE LOAN DOCUMENTS.

*(Signature Pages Follow)*

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the 23 day of _September_, 200 6.

J.B. Hunt, LLC

Signature:          X _____

Print Name:    J.B. Hunt
Title:              Manager

Guarantor Federal ID#:       71-0774308


STATE OF Arkansas )
                              )SS#
COUNTY OF Benton )

     On this 23rd day of September, 2006, before me the subscriber personally appeared J.B. Hunt, who being by me duly sworn, did depose and say; that he resides at 3333 Pinnacle Hills Parkway, Penthouse Suite 1, Rogers, AR 72758, that he is the person described in and who executed the foregoing instrument; and that he/she signed his name thereto freely and at his/her own volition.

_____
NOTARY PUBLIC

My Commission Expires: 7/5/16

# EXHIBIT "N"



**EXHIBIT**

N

C:# 000511728
L#: 000511685
PN#: 8800543551

**Personal Guaranty**
Aircraft Promissory Note

**FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and sufficiency of which are hereby acknowledged, and in order to induce **KEY EQUIPMENT FINANCE INC.,** ("Lender") to make loans and extend credit to **JR LEAR 60-089, LLC** ("Borrower"), with its principal place of business at 3333 Pinnacle Hills Parkway Penthouse Suite Two, Rogers, AR 72758-8952 for the financing of certain aircraft and related equipment (the "Equipment") pursuant to a Promissory Note, Aircraft Security Agreement and other Loan Documents, the undersigned, **Robert B. Thornton,** ("Guarantor"), residing at: 12135 Highway 72 West, Bentonville, AR 72712-9069, hereby absolutely unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. Notwithstanding the foregoing, the liability of the Guarantor under this Guaranty shall not exceed an amount (the "Cap") equal to (a) fifty percent (50%) of the then outstanding Obligations; provided, however, that nothing contained in the foregoing definition of the Cap is intended to, or shall be interpreted in any manner so as to, detract from or otherwise limit the waivers or other provisions set forth herein.

1.    **Definitions:** The following words shall have the following meanings in this Guaranty:

"Guaranty" means this Personal Guaranty made by Guarantor for the benefit of Lender.

"Obligations" means the obligations of Borrower under the Loan Documents, including, without limitation, the payment when due of all Payments (including, without limitation, principal and interest due on the indebtedness) and all other sums currently or hereafter owing by Borrower to Lender thereunder, including costs, expenses and attorneys fees incurred by Lender in connection therewith.

"Other Guarantor" means any other guarantor of the Obligations.

"Other Guarantees" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the meaning given in the Aircraft Security Agreement between Lender as Secured Party and Borrower as Grantor dated as of ___September 26___, 200_6_.

2.    **Nature of Guaranty.** Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations, subject to the Cap. Lender shall not be required to pursue any right or remedy it may have against Borrower or any Other Guarantor under the Loan Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Borrower or any Other Guarantor) before enforcing this Guaranty against Guarantor.

3.    **Guarantor's Representations and Warranties.** Guarantor warrants and represents to Lender that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which it is bound; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) the proceeds of the loans to be made by Lender to Borrower will result in a direct or indirect material economic benefit to Guarantor; (d) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (e) Guarantor has means to and shall keep adequately informed regarding Borrower's financial condition and Lender shall have no obligation to disclose to Guarantor any information regarding Borrower.

4.    **Guarantor Waivers.** (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Loan Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Borrower into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the membership interest in borrower, Borrower's capital stock, business or Borrower's assets to any other person or party; (ii) the death or dissolution of Borrower, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Borrower, Guarantor or any Other Guarantor; (iv) the granting by Lender of any indulgences or extensions to Borrower, Guarantor or any Other Guarantor; (v) the assertion by Lender against Borrower, Guarantor or any Other Guarantor of any of Lender's rights and remedies provided for under the Loan Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Borrower, Guarantor or any Other Guarantor from any Obligations under the Loan Documents, this Guaranty or any Other Guarantees by Lender or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of any of the Loan Documents, this Guaranty or any Other Guarantees; or (viii) the destruction, sale, modification or alteration of any item of the Equipment.

(b) Guarantor hereby waives notice of and consents to (i) the financing by Borrower of the Equipment, and to any subleasing or other use of the Equipment permitted by Lender (regardless of who any such sublessee or user may be), (ii) all of the provisions of the Loan Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Borrower of the foregoing documents and of any other agreements, documents and instruments executed by Borrower in connection therewith. Guarantor further waives notice of Lender's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Borrower under the Loan Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Loan Documents or of the terms and conditions of the Loan Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Borrower of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

5.    **Lender Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of Lender to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Loan Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by Lender to exercise any right

Form No.: AIR02-503PG-N.305

Page 1 of 3

or remedy against Borrower or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of Lender against the Borrower, Guarantor and the Other Guarantors are cumulative. Receipt by Lender of any payments or other sums payable under the Loan Documents with knowledge that Borrower has breached any of the terms, provisions or covenants of the Loan Documents shall not be deemed to be a waiver by Lender of such breach, or a release or relinquishment of any claim for future performance under the Loan Documents or this Guaranty.

6. **Subordination/Subrogation.** (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Borrower, or against or with respect to the Borrower's property (including, without limitation, property collateralizing the Loan Documents), arising from the existence or performance of this Guaranty, until all Obligations to the Lender have been fully and indefeasibly paid in full.

(b) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration or contribution which the Guarantor may now or hereafter have against any of the Other Guarantors in connection with payment of the Obligations under this Guaranty or under the Other Guarantees.

(c) The liability of Guarantor under this Guaranty shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied, subject to the Cap, without regard to whether any Other Guarantor has or has not paid any portion of the Obligations, as required under the Other Guarantees. Guarantor covenants and agrees that any indebtedness of Borrower to Guarantor is hereby subordinated to the obligations of Borrower to Lender, and that after any default under the Loan Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Borrower in trust for Lender to satisfy the obligations of Borrower to Lender and shall forthwith deliver such funds to Lender in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7. **Assignment.** This Guaranty is assignable by Lender without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of Lender. Any assignee of Lender shall have all of the rights of Lender hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of Lender, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8. **Severability/Governing Law.** If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of Lender in order to effect the provisions hereof. This Guaranty shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflicts of laws principles of such state. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against Lender or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9. **Jury Trial Waiver.** GUARANTOR HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE LOAN DOCUMENTS.

*(Signature Pages Follow)*

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the _23_ day of _September_, 200 _6_.

**Robert B. Thornton**

Signature:     x _Robert B Thornton_

Guarantor's Residence Address:     12135 Highway 72 West, Bentonville, AR 72712-9069

Guarantor's SS#:     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

STATE OF _Arkansas_ )
                                          )SS#
COUNTY OF _Benton_ )

On this _23rd_ day of _September_, 200 _6_ before me the subscriber personally appeared <u>Robert B. Thornton</u>, who being by me duly sworn, did depose and say; that he resides at ~~12135 Highway 72 West, Bentonville, AR 72712-9069~~, that he is the person described in and who executed the foregoing instrument; and that he/she signed his name thereto freely and his/her own volition.

_Cheryl Nida_
NOTARY PUBLIC

My Commission Expires: _7/5/16_

17 Windsor Ct.
Rogers, AR 72758

CHERYL NIDA
BENTON COUNTY, ARKANSAS
NOTARY PUBLIC
MY COMM.
COMM. # 12346989
EXPIRES JULY 5, 2016

# EXHIBIT "O"



EXHIBIT

C:# 000511728
L#: 000511685
PN#: 8800543551

**Personal Guaranty**
Aircraft Promissory Note

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, and in order to induce KEY EQUIPMENT FINANCE INC., ("Lender") to make loans and extend credit to JR LEAR 60-099, LLC ("Borrower"), with its principal place of business at 3333 Pinnacle Hills Parkway Penthouse Suite Two, Rogers, AR 72758-8952 for the financing of certain aircraft and related equipment (the "Equipment") pursuant to a Promissory Note, Aircraft Security Agreement and other Loan Documents, the undersigned, Bill W. Schwyhart ("Guarantor"), residing at: 9 Clubhouse Dr, Rogers, AR 72758-9563, hereby absolutely unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. Notwithstanding the foregoing, the liability of the Guarantor under this Guaranty shall not exceed an amount (the "Cap") equal to (a) fifty percent (50%) of the then outstanding Obligations; provided, however, that nothing contained in the foregoing definition of the Cap is intended to, or shall be interpreted in any manner so as to, detract from or otherwise limit the waivers or other provisions set forth herein.

1.     <u>Definitions</u>: The following words shall have the following meanings in this Guaranty:

"Guaranty" means this Personal Guaranty made by Guarantor for the benefit of Lender.

"Obligations" means the obligations of Borrower under the Loan Documents, including, without limitation, the payment when due of all Payments (including, without limitation, principal and interest due on the indebtedness) and all other sums currently or hereafter owing by Borrower to Lender thereunder, including costs, expenses and attorneys fees incurred by Lender in connection therewith.

"Other Guarantor" means any other guarantor of the Obligations.

"Other Guarantees" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the meaning given in the Aircraft Security Agreement between Lender as Secured Party and Borrower as Grantor dated as of ___September 26___, 200 6 .

2.     <u>Nature of Guaranty</u>. Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations, subject to the Cap. Lender shall not be required to pursue any right or remedy it may have against Borrower or any Other Guarantor under the Loan Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Borrower or any Other Guarantor) before enforcing this Guaranty against Guarantor.

3.     <u>Guarantor's Representations and Warranties</u>. Guarantor warrants and represents to Lender that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party to or by or under which it is bound; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) the proceeds of the loans to be made by Lender to Borrower will result in a direct or indirect material economic benefit to Guarantor; (d) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (e) Guarantor has means to and shall keep adequately informed regarding Borrower's financial condition and Lender shall have no obligation to disclose to Guarantor any information regarding Borrower.

4.     <u>Guarantor Waivers</u>. (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Loan Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Borrower into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the membership interest in borrower, Borrower's capital stock, business or Borrower's assets to any other person or party; (ii) the death or dissolution of Borrower, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Borrower, Guarantor or any Other Guarantor; (iv) the granting by Lender of any indulgences or extensions to Borrower, Guarantor or any Other Guarantor; (v) the assertion by Lender against Borrower, Guarantor or any Other Guarantor of any of Lender's rights and remedies provided for under the Loan Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Borrower, Guarantor or any Other Guarantor from any Obligations under the Loan Documents, this Guaranty or any Other Guarantees by Lender or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of any of the Loan Documents, this Guaranty or any Other Guarantees; or (viii) the destruction, sale, modification or alteration of any item of the Equipment.

(b) Guarantor hereby waives notice of and consents to (i) the financing by Borrower of the Equipment, and to any subleasing or other use of the Equipment permitted by Lender (regardless of who any such sublessee or user may be), (ii) all of the provisions of the Loan Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Borrower of the foregoing documents and of any other agreements, documents and instruments executed by Borrower in connection therewith. Guarantor further waives notice of Lender's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Borrower under the Loan Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Loan Documents or of the terms and conditions of the Loan Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Borrower of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

5.     <u>Lender Waiver</u>. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of Lender to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Loan Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by Lender to exercise any right

or remedy against Borrower or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of Lender against the Borrower, Guarantor and the Other Guarantors are cumulative. Receipt by Lender of any payments or other sums payable under the Loan Documents with knowledge that Borrower has breached any of the terms, provisions or covenants of the Loan Documents shall not be deemed to be a waiver by Lender of such breach, or a release or relinquishment of any claim for future performance under the Loan Documents or this Guaranty.

6.      **Subordination/Subrogation.** (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Borrower or against or with respect to Borrower's property (including, without limitation, property collateralizing the Loan Documents), arising from the existence or performance of this Guaranty, until all Obligations to the Lender have been fully and indefeasibly paid in full.

(b) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration or contribution which the Guarantor may now or hereafter have against any of the Other Guarantors in connection with payment of the Obligations under this Guaranty or under the Other Guarantees.

(c) The liability of Guarantor under this Guaranty shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied, subject to the Cap, without regard to whether any Other Guarantor has or has not paid any portion of the Obligations, as required under the Other Guarantees. Guarantor covenants and agrees that any indebtedness of Borrower to Guarantor is hereby subordinated to the obligations of Borrower to Lender, and that after any default under the Loan Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Borrower in trust for Lender to satisfy the obligations of Borrower to Lender and shall forthwith deliver such funds to Lender in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7.      **Assignment.** This Guaranty is assignable by Lender without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of Lender. Any assignee of Lender shall have all of the rights of Lender hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of Lender, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8.      **Severability/Governing Law.** If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of Lender in order to effect the provisions hereof. This Guaranty shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflicts of laws principles of such state. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against Lender or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9.      **Jury Trial Waiver.** GUARANTOR HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE LOAN DOCUMENTS.

*(Signature Pages Follow)*

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the _23_ day of _September_, 200_6_.

Bill W. Schwyhart

Signature: X _____

Guarantor's Residence Address:       9 Clubhouse Dr, Rogers, AR 72758-9563
Guarantor's SS#:                      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

STATE OF Arkansas )
                            )SS#
COUNTY OF Benton )

On this _22nd_ day of _September_, 200_6_, before me the subscriber personally appeared **Bill W. Schwyhart**, who being by me duly sworn, did depose and say; that he resides at **9 Clubhouse Dr., Rogers, AR 72758-9563**, that he is the person described in and who executed the foregoing instrument; and that he signed his name thereto freely and of his own volition.

Cheryl Nida
NOTARY PUBLIC

My Commission Expires: 7/5/16

CHERYL NIDA
BENTON COUNTY, ARKANSAS
MY COMM. EXPIRES JULY 5, 2016
NOTARY PUBLIC
COMM. # 12349269

℘JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Center Capital Corporation | JR Lear 60-099, LLC, J.B. Hunt, LLC, Pinnacle Air, LLC, Jet Ride, Inc., Robert B. Thornton, and Bill W. Schwyhart ➕ |
| **(b)** County of Residence of First Listed Plaintiff   Farmington, CT<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   Arkansas for all except ➕<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Seitz Van Ogtrop & Green, P.A. 222 Delaware Ave. Ste. 1500<br>Wilmington, DE  19801 (302) 888-0600   ➕ | Attorneys (If Known) |

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
       Plaintiff

☐ 2   U.S. Government
       Defendant

☐ 3   Federal Question
       (U.S. Government Not a Party)

☒ 4   Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>  Med. Malpractice<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>  Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 875 Customer Challenge<br>  12 USC 3410 |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☒ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate<br>  Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br>  & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>  Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus -<br>  Alien Detainee<br>☐ 465 Other Immigration<br>  Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>  Act<br>☐ 900Appeal of Fee Determination<br>  Under Equal Access<br>  to Justice<br>☐ 950 Constitutionality of<br>  State Statutes |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       another district
       (specify)

☐ 6   Multidistrict
       Litigation

☐ 7   Appeal to District
       Judge from
       Magistrate
       Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
6 Del. C. Section 9-609

Brief description of cause:
Default under the terms of Aviation Security Agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

DEMAND $   $ 5.4 million

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   8/12/08

SIGNATURE OF ATTORNEY OF RECORD   Robert Karl Hill (#2747)

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**      Example:      U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____

# ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____6____ COPIES OF AO FORM 85.

_____8/12/08_____
(Date forms issued)

_____
(Signature of Party or their Representative)

_____Chaz Enerio_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action