## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CENTER CAPITAL CORPORATION,    :
    :
        Plaintiff,    :
    :
      v.    :    C. A. No. 08-508-JJF-MPT
    :
JR LEAR 60-099, LLC; J. B. HUNT, LLC;    :
PINNACLE AIR, LLC; JET RIDE, INC.;    :
ROBERT B. THORNTON; and BILL W.    :
SCHWYHART,    :
    :
        Defendants.    :

## REPORT AND RECOMMENDATION

### I.      Procedural Background

Center Capital Corporation ("plaintiff" or "Center Capital") instituted the instant

action seeking a writ of replevin and damages for breach of contract and corporate and

personal guarantees by defendants related to the sale/lease of an aircraft.  On August

14, 2008, a writ of replevin was issued directing that possession of the aircraft be turned

over to Center Capital.[1]  Thereafter, notices of voluntary dismissal were filed by Center

Capital for Jet Ride, Inc. and J.B. Hunt, LLC.[2]  Pinnacle Air LLC was terminated as a

party as a result of the filing of the first amended complaint on February 9, 2009.[3]

Default judgment was entered against JR Lear 60-099, LLC ("JR Lear") on June 26,

2009, in the amount of $5,227,363.90, plus interest, for failure to plead or otherwise

defend against this matter.[4]  Center Capital moved for summary judgment against

---

[1] D.I. 7.
[2] D.I. 14, 52.
[3] D.I. 33.
[4] D.I. 61.

defendants, Robert B. Thorton and Bill W. Schwyhart ("defendants" or "Thorton" and "Schwyhart").[5]  On December 16, 2009, the court entered partial summary judgment in favor of Center Capital and against defendants, reserving decision on the determination of damages.[6]  Thereafter, on January 8, 2010, Center Capital filed a motion for determination of damages and final summary judgment, relying on the supplement affidavit of Dave Halvarson,[7] requesting that the court enter final judgment in its favor and against defendants, jointly and severally for $3,449,404.19 as of January 8, 2010, plus continuing interest at $1,585.36 per diem, along with attorneys' fees and costs.[8]  Defendants opposed that motion and sought to conduct discovery regarding the marketing and disposition of the collateral at issue.[9]  Center Capital agreed in limited discovery on the issues concerning the sale and marketing of the aircraft, after which the court would conduct an evidentiary hearing on damages, if necessary.[10]

On March 25, 2010, as a result of a teleconference held on the previous day, the court entered a scheduling order addressing the outstanding matters and setting a cut-

---

[5] D.I. 40.
[6] D.I. 71, 72.
[7] D.I. 69.  Dave Halvarson is the senior Vice President of Center Capital, who was responsible for supervising the contracts involved in this case and the repossession and sale of all equipment and the aircraft.  He has either personal knowledge of the events or is qualified and authorized to testify regarding the methods and process of Center Capital to collect and record information contained in its files regarding the events involved in this case.  *See* ¶¶ 1-7.
[8] D.I. 73.
[9] D.I. 75.
[10] D.I. 76. Center Capital's motion to enter and continue its motions for determination of damages.  *See also* D.I. 78, in which the court granted and denied in part D.I. 76.  In this March 9, 2010 order, the district court judge also referred this matter to Magistrate Judge Thynge pursuant 28 U. S. C. § 636 to conduct a hearing on damages.

off date for discovery on May 21, 2010, a pretrial conference for June 10, 2010 and bench trial of damages for June 24, 2010.[11]

However, on April 12, 2010, defendants through their then counsel, Daune Morris, LLP cancelled the Fed. R. Civ. P. 30(b)(6) deposition of plaintiff.  Shortly thereafter, on April 23, 2010, defense counsel moved to withdraw, which was granted on May 11, 2010.[12]  On the same day, Teresa Nazario, Esq., in-house counsel for Pinnacle Investments, a corporation of defendants, advised Center Capital that Thorton and Schwyhart "cannot and are not going forward in this matter."[13]  She also canceled the depositions of defendants that were scheduled for May 14, 2010.  In response, Center Capital filed a motion to deem its motion for determination of damages and final summary judgment as unopposed, or in the alternative, a motion to compel defendants to comply with the scheduling order or be prohibited from offering evidence at the damages hearing.[14]

As a result, the court scheduled a teleconference for May 27, 2010 to discuss and confirm the status of the case.  During that teleconference, although she had not entered her appearance, Ms. Nazario represented that she was authorized to speak on the behalf of defendants.  Schwyhart also participated during that teleconference, and confirmed Ms. Nazario's representation.  Due to the representations made during that

---

[11] D.I. 87.  The scheduling order also included an expedited briefing schedule on the issue of whether defendants were entitled to a jury trial on the damages.  The demand for a jury trial was withdrawn on March 25, 2010.  *See* D.I. 88.

[12] D.I. 90, 92.

[13] D.I. 93, ¶ 7-8 and Ex. A.

[14] D.I. 93.  The motion noted that no experts had been identified by defendants and they had not responded to Center Capital's outstanding discovery.

teleconference on behalf of defendants and by Schwyhart, the court granted on June 2, 2010, Center Capital's motion for determination of damages and final summary judgment as unopposed, cancelled the evidentiary damages hearing and denied as moot plaintiff's motion to compel.[15]

On June 8, 2010, counsel for Center Capital filed his affidavit in support of its request for attorneys' fees and costs.[16]  On the same date, the court emailed counsel advising of the additional information needed to perform a lodestar review of plaintiff's request for attorneys' fees and costs.  Consistent with the directions of the court, out of state counsel and local counsel filed updated affidavits in support of Center Capital's request for attorneys' fees and costs.

## II.    Facts

As noted in the memorandum opinion of December 16, 2009,[17]  Key Equipment Finance Inc. ("Key Finance") entered into an Aircraft Security Agreement with JR Lear on September 26, 2006 in connection with the purchase of a corporate aircraft. Thornton and Schwyhart served as personal guarantors on payment of the purchase amount via the execution of personal guaranty agreements.[18]  Thereafter, Key Finance

---

[15] D.I. 98.  As instructed by the court, the order was drafted by counsel for plaintiff:  however, before the court executed the order, Ms. Nazario approved the order as to form.

[16] D.I. 99.

[17] D.I. 71.

[18] Under each guaranty agreement, Thornton and Schwyhart unequivocally provided that they "absolutely, unconditionally, and irrevocably" guaranteed to the lender the "full and prompt payment and performance by the Borrower of all Obligations . . . .  Notwithstanding the foregoing, the liability of the Guarantor under this Guaranty shall not exceed an amount (the 'Cap') equal to (a) fifty percent (50%) of the then outstanding Obligations . . . ." D.I. 69, Ex. J and K.

sold, assigned and transferred all rights, title and interest in the Security Agreement to Center Capital.[19]  JR Lear defaulted by failing to make the required monthly payment on July 8, 2008 and by failing to make any subsequent payments thereafter.  The defaults by JR Lear resulted in an acceleration of the terms and conditions of the Security Agreement and Center Capital sought to recover against Thornton and Schwyhart under the Personal Guarantees.

Under Section 5.2 of the Security Agreement, the remedies available upon the occurrence of any default gave Center Capital the right to proceed with any appropriate court action, sell or otherwise dispose of the aircraft at any private or public sale and recover "all costs, charges and expenses, including reasonable legal fees and disbursements and any appraisal costs, incurred [by Center Capital] by reason . . . of any Event of Default or in enforcing [its] rights under the Agreement . . . ."[20]  According to the Promissary Note (the aircraft loan), JR Lear promised to pay the entire sum due and owing for the principal, interest and payment premium and late payment charges, if any, on the loan for the aircraft ($6,061,900. at the time of execution), as well as all "costs and expenses of collection, including without limitation, reasonable attorneys' fees, incurred in connection with enforcement [by Center Capital] of its rights and remedies hereunder and under the other Loan documents . . . in connection with . . . judicial proceedings . . . ."[21]  In each Personal Guaranty, the definition of the "obligations" secured by Thornton and Schwyhart meant those obligations of JR Lear

---

[19] *Id.*, Ex. M.
[20] *Id.*, Ex. A.
[21] *Id.*, Ex. H.

under the loan documents, "including costs, expenses and attorneys fees incurred by the Lender in connection therewith."[22]

## III.    Parties' Contentions

Center Capital maintains that as of June 4, 2010 amount owed by Thornton and Schwyhart is $3,791,202. which includes attorneys' fees and costs of $108,750.06.[23]  In calculating the principal amount due, Center Capital relies on the Halvarson affidavit previously filed in this matter in support of its summary judgment motion.  Taking into account the settlement with J.B. Hunt, the net proceeds from the sale of the aircraft and related expenses, and the accumulating interest, the total amount under the loan documents Center Capital asserts is due as of June 4, 2010 is $3,682,452.[24]  It notes,

_____

[22] *Id.*, Ex. J and K.

[23] June 4, 2010 letter from Dressler Peters, LLC (not docketed).  Further, according to the loan documents per diem rate of interest at 18% continues to run until the date of judgment.

[24] According to the Halvarson affidavit, as of July 24, 2008, the principal balance due under the Security Agreement was $5,410,890.24, plus $4,492.75 in late fees and prejudgment interest of 18% at a per diem rate of $2,705.45, making the total amount due at $5,761,680.59 as of December 2, 2008.  *See* D.I. 69, ¶¶ 15,16 and 18.  The interest that accrued from December 2 to January 23, 2009 (52 days at $2,705.45 per day) was $140,638.40, resulting in a total amount of $5,902,363.90 due by the January date.  *See* ¶¶ 19-20.  Subsequently, Center Capital settled with J.B. Hunt on January 24, 2009 which reduced the outstanding balance by $675,000, so that the remaining amount due as of that date was $5,22,.363.90.  *See* ¶ 22.  Consistent with the Security Agreement, per diem interest continued to accrue at the rate of 18% which resulted in a daily rate of $2,577.87 ($5,227.363.90 x .18/365 = $2,577.87).  *See* ¶ 23.  Because of the accumulating interest, the amount due when the aircraft was sold on August 13, 2009 for principal, interest and late fees was $5,745,515.77.  *See* ¶ 24.  The aircraft was sold for $3,132,000.  Additional expenses incurred by Center Capital were $42,690 for engine maintenance agreement costs, $500 in fees for registration of the aircraft, closing costs for the sale of $2,250, a broker fee relating the sale of $75,000, personal property tax of $25, and repairs to the plane of $480,790.09.  *See* ¶¶ 27-32.  Those total costs equaled $601,255.09.  Therefore, the net proceeds from the sale ($3,132,000. - $601,255.09 = $2,530,744.91) resulted in a principal amount due as of August 13, 2009 of $3,214,770.86 ($5,745,515.77 - $2,530,744.91).  Based on that reduced amount, the

consistent with the previous summary judgment determination, that Thornton and Schwyhart do not dispute that they executed the Personal Guarantees or that they failed to make the required payments.  The dispute had centered on the commercial reasonableness of Center Capital's activities and a purported failure to mitigate.  Since those issues have now been resolved in plaintiff's favor pursuant to the June 2, 2010 order, it demands final judgment be entered against each defendant for 50% of the entire obligation.

Although defendants do not dispute certain of their obligations under the various loan documents, including the Personal Guarantees, during the teleconference of May 27, 2009, Schwyhart contended that the liability of J.B. Hunt, Thornton and himself were the same at 32% each, and argued that each defendants' exposure should be equal to J.B. Hunt's settlement.  Plaintiff disputes that position.

## IV.   Discussion

As determined previously on the motion for summary judgment, "all that the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty."[25]  Defendants do not dispute that they signed the Personal Guarantees, their obligations contained therein, nor their

---

per diem interest of 18% equaled $1,585.36 until the date of judgment.  *See* ¶ 33.  As of June 4, 2010, the additional interest that accumulated since August 13, 2009 was $467,681.20 (295 days x $1,585.36 per day) making the total principal amount due of $3,682,452.  *Id.*  Because interest continues to accumulate at the daily rate of $1,585.36 until the day of judgment, the total principal amount due as of the date of this Report and Recommendation is $3,760,134.64 ($1,585.36 x 49 days [June 4 to July 23] = $77,682.64 + $3,682,452).

[25] *City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71 (N.Y. App. Div. 1998).

failure to make the required payments.  The Security Agreement provides that in the case of default, in addition to any unpaid principal or interest and late payment charges, the borrower was also responsible for any and all charges, costs, expenses, interest at the per diem rate of 18% on the total due and reasonable attorneys' fees incurred by Center Capital in enforcing its rights under that agreement.  The promissary note provides that under default, the entire sum for principal, interest and late fees was immediately due, along with any costs and expenses related to collecting on the loan, including reasonable attorneys' fees.  The Personal Guarantees made defendants responsible for all obligations of the borrower under the aforementioned documents and specifically provided that their liability was "absolute, primary and direct," with the guaranty being "valid, enforceable and unconditionally binding upon" each defendant. Moreover, the liability of each defendant is unlimited and continuing.[26]   The only limitation is the provision in the Personal Guarantees which caps each defendant's responsibility to an amount of 50% of the entire outstanding obligation.  The court has scoured the documents provided by the parties and is unable to find any other limitation on Thornton and Schwyhart's liability under the various loan documents and guarantees.  Therefore, any settlement entered into between Center Capital and J.B. Hunt is irrelevant to the nature of the obligations of defendants as contained in those documents.[27]

The affidavit and supplemental affidavit of Dennis A. Dressler ("Dressler affs.")[28]

---

[26] D.I. 69.
[27] Central Capital in its calculations has reduced the amount due, which also reduced the amount of accumulating interest, by the settlement amount with J.B. Hunt.
[28] D.I. 99, 101 respectively.

and the affidavit of local counsel, R. Karl Hill, ("Hill aff.")[29] are made in support of Center Capital's request for attorneys' fees and related expenses.  The Dressler affs. confirm that 460.41 hours were expended for legal services (both counsel and paralegal services) from late July 2008 through May 28, 2010 by Dressler/Peters, LLC, out of state counsel representing Center Capital.  The hourly rate charged by the partners of that firm is $225.00, while the hourly rate for associates is $175.00.  The affidavits reveal that the partners, Dressler and Peters, have twelve and 27 years respectively in the practice of commercial litigation and are licensed and in good standing in various jurisdictions, including Illinois where their office is located.  The associates have been in practice for 8 to 17 years and are also licensed and in good standing in Illinois.  The paralegals involved in this matter have experience ranging from 4 to 8 years and their hourly rate is $100.00.  The Dressler affs. prove that the hourly rates charged are consistent with those rates charged by counsel of equal or similar standing in the profession.  The costs incurred by Dressler/ Peters, LLC are $17,885.21 which included the charges by local counsel through April 2010.

According to the Hill aff.,  R. Karl Hill is a partner at Seitz, Van Ogtrop & Green, P. A. ("SVG"), who has been admitted to practice in Delaware since 1989 and is a member in good standing in that jurisdiction, as well as the District Court for the District of Delaware and the United States Court of Appeals of the Third Circuit.  His hourly rate is $250.00.  He began providing legal services to Center Capital in August 2008.  In addition, another partner of SVG, Kevin A. Guerke, Esq., represented plaintiff and since

---

[29] D.I. 102.

2001 has been admitted to practice in Delaware, this court and the Third Circuit and is a member in good standing in this jurisdiction.  His hour rate is $175.00.  The Hill aff. confirms that both hourly rates fall well within the range of rates typically charged in Delaware for commercial litigation work.  The Hill aff. notes that SVG has billed Dressler/Peters through April 2010 the amount of $14,982.50 for attorney time, plus $1,134.05 in expenses, for a total of $16,116.55.

According to the Dressler affs. and the Hill aff., as of May 28, 2010, Center Capital has incurred and paid a total of $108,750.06 in fees and costs.[30]

Defendants do not dispute the hourly rate, the amount of hours expended or reasonableness of the attorneys' fees demanded.

## ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

1.  Judgment be entered in favor of plaintiff, Center Capital Corporation in the amount of $3,760,134.64 against defendants Robert B. Thorton and Bill W. Schwyhart for damages arising under the loan documents and Personal Guarantees, with interest at the daily rate of $1,585.36 continuing to accrue until final judgment is entered, plus attorneys' fees and costs as of May 28, 2010 in the amount of $108,750.0, with leave for Center Capital to file a petition to modify should any additional fees and costs have been incurred since that date.  It should be further ordered that consistent with the Personal Guarantees, each defendant is responsible for fifty percent (50%) of the total judgment.

---

[30] The Dressler affs. request leave to file an amended fee schedule, if needed, to include additional expenses and fees incurred subsequent to May 28, 2010.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).  The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: July 23, 2010                    /s/ Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE